UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | No. 21 CR 618-6 |
| RALPH TURPIN | Honorable Martha M. Pacold |

### GOVERNMENT'S RESPONSE TO DEFENDANT TURPIN'S MOTION TO SEVER

The United States of America, through its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, respectfully submits its response to defendant Ralph Turpin's untimely motion to sever.[1] (Dkt. 249.) Because Turpin was appropriately charged with his co-defendants and has not demonstrated he would be prejudiced by a joint trial, Turpin's motion should be denied.

**I.      RELEVANT FACTUAL BACKGROUND**

    **a.  Charges Against Turpin**

The indictment in this case charges defendants Liggins, Roberson, Offerd, Thomas, and Smart with murder in aid of racketeering activities, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2 (Count 1); using, carrying,

---

[1] The Court previously ordered motions under Rule 12(b) to be filed by July 10, 2023. (Dkt. 151.) On July 12, 2023, in a joint status report, Turpin represented he did not intend to file pretrial motions, and that the parties were on track to proceed to trial on October 10, 2023. (Dkt. 160) Defendant Turpin's motion to sever was filed on September 3, 2023.

brandishing, and discharging a firearm during and in relation to a crime of violence, namely, murder in aid of racketeering activities; and causing the death of a person through the use of the firearm, in violation of Title 18, United States Code, Sections 924(j)(1) and 2 (Count 2); conspiracy to commit murder in aid of racketeering activities, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2 (Count 3); assault with a deadly weapon in aid of racketeering activities, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2 (Counts 4 and 6); and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, namely, assault with a deadly weapon in aid of racketeering activities, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2 (Counts 5 and 7). Dkt. 120. As to defendant Turpin, he is charged in Count One (related to the murder of Weekly in aid of racketeering) and Count Three (related to the conspiracy to murder Weekly in aid of racketeering).

As part of a theory of liability, all defendants are charged with aiding and abetting the murder of Carlton Weekly, in violation of Title 18, United States Code, Section 2. If proven, this theory of liability would hold an individual just as guilty as a principal. For the government to prove a defendant is guilty of a crime as an aider and abettor, the government must prove: (1) that the crime was committed and that the defendant (2) knowingly (3) participated in the criminal activity and tried to make it succeed.  *See* William J. Bauer Pattern Criminal Jury Instructions (2022), "Aiding and Abetting," page 95.

2

An individual can aid and abet a conspiracy without necessarily being a member of the conspiracy. *United States v. Zafiro*, 945 F.2d 881, 844 (7th Cir. 1991) ("Suppose someone who admired criminals and hated the police learned that the police were planning a raid on a drug ring, and, hoping to foil the raid and assure the success of the ring, warned its members—with whom he had had no previous, or for that matter subsequent, dealings—of the impending raid. He would be an aider and abettor of the drug conspiracy, but not a member of it. For the essence of conspiracy is agreement, and there is none in [this] hypothetical case." (citations omitted).

b. **Turpin's Role**[2]

Without Turpin's aiding and abetting behavior, Weekly's murder would not have happened on Oak Street on August 4, 2020. As described below and elsewhere in government filings, Turpin was on Oak Street before, during, and after the shooting. It was Turpin who reported Weekly's location, and Turpin remained on scene after the shooting to confirm Weekly had been shot.

Several of the locations discussed in this filing are depicted in the section of a map below[3]:

---

[2] By including facts in this section, the government is neither committing to introducing evidence of these facts at trial nor agreeing to limit the scope of its evidence to the facts described herein.
[3] For perspective, according to Google Maps, the distance between Milani and Dolce & Gabbana on the map above is approximately 150 feet.



At approximately 3:59 p.m. on August 4, 2020, Turpin entered Milani Boutique, a high-end clothing store located at 50 E. Oak Street in the Gold Coast area of Chicago. According to video from East Oak Street, Carlton Weekly was already inside of Milani when Turpin entered.

At approximately 4:02 p.m., only minutes after Turpin entered the store where Weekly was shopping, video from the Parkway Gardens apartment complex on the south side of Chicago showed Smart running across the parking lot up a stairwell, followed by Roberson. The defendants in Parkway Gardens (all charged defendants but Turpin), hurriedly piled into two vehicles destined for Weekly's location.

Back on Oak Street, starting at approximately 4:04 p.m., Weekly exited Milani Boutique, got into a vehicle, rode down Oak Street and then looped around to stop in front of Dolce & Gabbana.

By approximately 4:06 p.m., defendants Smart, Liggins, Roberson, Thomas, and Offred were pulling out of the parking lot of Parkway Gardens, in a Chrysler 300 and Ford Fusion.

4

Turpin exited Milani at approximately 4:07 p.m. and stayed in or near the same block of Oak Street during and for a short time after the murder. At approximately 4:10 p.m., Turpin entered a clothing store down and across the street from Milani Boutique: Moncler, located at 33 E. Oak Street. While in Moncler, Turpin discussed what had occurred inside of Milani while speaking on the phone. Because Turpin was speaking in a wild and agitated state, a security guard inside of Moncler began to record Turpin at 4:13 p.m.



While on the phone, Turpin provided the person on the other end of the line with the address for Milani, the store where Turpin and Weekly had just been in minutes prior. Turpin also asked, "[w]hat's D Thang number?" and went on to tell the person to whom Turpin was speaking to have "D Thang" call Turpin. Multiple

5

witnesses are expected to testify that D Thang is a high-ranking Black Disciples member who, at times material to the superseding indictment, was a part of a Black Disciple faction allied with O-Block, Lamron.

Witnesses will also testify that Turpin is a Black Disciple and is associated with "Trigger Happy Family" (often referred to as "THF" or "THF 46") a gang set of the Black Disciples that was "cliqued up" with O-Block. As a result of that association, Turpin knew that THF members and O-Block members wanted Weekly dead and would travel to Oak Street to kill Weekly.

After Turpin's call, he left Moncler.  As the other defendants drove in his direction, Turpin stood outside near the Escada store, located at 51 East Oak Street, until the Ford Fusion and Chrysler 300 arrived and some of their occupants got out and shot Weekly, Victim 1, and Victim 2 in front of the Dolce & Gabbana store.

Immediately after the shooting, Turpin briefly ran a few storefronts down Oak Street away from Dolce & Gabbana, then turned back toward the location of the shooting.  Turpin walked east down Oak Street, past Escada and Le Colonial until he was almost directly across the street from the scene of the shooting.  He arrived before first responders and most police officers. When he arrived, Weekly and Victim 2 were lying on the ground bleeding from their respective gunshot wounds. and Victim 1, who had also been shot, was frantic.

As shown in still images from Oak Street video below, Turpin, in the white shirt and jeans, looked directly across the street, stepping up on his toes as if to get

6

a better view of something. More specifically, Turpin looked in Weekly's direction while talking on the phone, raised up on his toes to get a better view, and turned to walk back down Oak Street toward his car.





## II. ARGUMENT

Defendant argues his trial should be severed from his co-defendants based on Federal Rule of Criminal Procedure, Rule 8 claiming there is no common act or transaction between Turpin and his co-defendants, and under Rule 14, alleging a joint trial would be unfairly prejudicial. Neither rule is violated here, and Turpin can and should be appropriately tried with his five co-defendants in one trial.

### a. Severance is Not Required by Rule 8(b)

Rule 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Not all defendants need to be charged in each count." *Id.* Rule 8 is broadly interpreted and allows for "liberal joinder in order to enhance judicial efficiency."

7

*United States v. Nettles*, 476 F.3d 508, 516 (7th Cir. 2007). In assessing the propriety of joined charges and defendants, a court looks "solely to the face of the indictment and not to the evidence adduced later at trial." *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003).

"Generally, where the indictment charges a conspiracy, or a crime having a principal and aider-abettors, the rule is that persons jointly indicted should be tried together." *United States v. Kahn*, 381 F.2d 824, 838 (7th Cir. 1967) (citations omitted). "And where proof of the charges against the defendants is dependent upon the same evidence and alleged acts, as is the case when the charged relationship of the defendants is principal--aider-abettor, severance should not be granted except for the most cogent reasons." *Id.* That situation is present here as defendant Turpin is charged, in the same indictment as the principals, as an aider and abettor.

Defendant's motion correctly notes that Turpin is not a member of O-Block, the charged enterprise. However, defendant's motion incorrectly suggests that evidence that the other defendants are members or affiliates of the enterprise is irrelevant to the case against Turpin or would be inadmissible in a case against Turpin.[4] As to Turpin's charges, the government must prove beyond a reasonable

---

[4] Defendant's motion at pg. 8 suggests that alleged "days and weeks" of evidence of prior murders by O-Block will (1) be admitted at this trial and (2) would not be admissible against Turpin. The government maintains that this is an inaccurate characterization of the length of the government's evidence on point but, in any event, evidence of the enterprise's activities would be relevant in a case against Turpin as described *infra*. Defendant's motion does not otherwise appear to specify what evidence he believes will be admitted at the forthcoming trial that would be inadmissible against him, or what evidentiary rule such evidence would violate.

8

doubt that the crimes Turpin aided and abetted – murder in aid of racketeering and conspiracy to murder in aid of racketeering – actually occurred. In other words, in a trial solely against Turpin, the government would offer evidence that two or more persons agreed to murder Weekly in aid of racketeering for the purpose of maintaining or increasing status in the O-Block, the charged enterprise, as charged in Count One.

Defendant's motion offers no reason that this Court should take the unusual step of severing a trial of an aider and abettor of certain crimes from the trial of the principal offenders. To sever Turpin's trial would be to – unnecessarily – put the court, court staff, witnesses, experts, and victims and victim's family members, among others, through nearly identical five-week trials twice. This is the opposite of judicial economy and should be rejected.

### b. Severance is Not Required by Rule 14

The prevailing preference in the federal system is that the defendants who are indicted together to be tried together, as "in all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Maggard*, 865 F.3d 960, 972 (7th Cir. 2017) (internal quotations omitted); *see also United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007). Because this case presents no such unusual circumstances for defendant Turpin, his motion should be denied.

9

Generally, "[t]he fact that the government has greater evidence against one co-defendant does not automatically give the other defendant grounds for severance." *United States v. Stoecker*, 920 F.Supp. 876, 886 (N.D.Ill.,1996), *citing United States v. Studly*, 892F.2d 518, 524 (7th Cir. 1989). Such "spillover" claims, or claims of prejudice based on "guilt by association," do not alone warrant severance, and in most cases, limiting instructions to the jury will adequately cure any potential prejudice. *Id.*

A defendant is entitled to severance based upon differing culpability only if there is such a great disparity that he or she cannot receive a fair trial without a severance. *United States v. Mansoori*, 304 F.3d 635, 664 (7th Cir. 2002); *Kahn*, 381 F.2d at 839 (district court did not abuse discretion in denying motion to sever where Seventh Circuit could not find from the record a "a clear likelihood of confusion in the juror's minds so great as to prejudice the defendants," particularly in light of appropriate admonitory instructions to jury to consider defendants separately).[5]

As noted by the Seventh Circuit, "[t]he cases affirming joint trials . . . , notwithstanding the different degrees of involvement among various coconspirators and the different magnitudes of evidence against each defendant, are legion." *Mansoori*, 304 F.3d at 664 (citing cases); s*ee, United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) (Seventh Circuit has "repeatedly rejected" the defendant's argument that he was highly prejudiced by spillover evidence given the disparity of the evidence against him compared to that against his codefendants).

---

[5] The Government has proposed such an instruction in this case. (Dkt. 239.)

10

For example, in *United States v. States*, 652 F.3d 734, 743-44 (7th Cir. 2011), the Seventh Circuit rejected States's argument that his charges for racketeering and drug trafficking activities should have been severed from his charge of attempted murder of a law enforcement officer attempting to arrest him on the initial charges, resulted in prejudicial spillover, finding that this was the sort of "garden variety side effect present in every case in which multiple counts are joined." *Id.* (internal citation and quotation marks omitted).

Defendant's reliance on a district court decision in *United States v. Stoecker*, is unavailing. In *Stoecker*, a request for severance was granted where a defendant (Asta) was charged in only three counts of a 58-count indictment, the defendant was not charged with his four co-defendants in a wire fraud scheme that was charged as the first count, the government intended to offer evidence of other criminal acts under Rule 404(b) as to two other defendants which would not be admissible against Asta, and there was unfair prejudice to Asta, and counsel in preparing for a trial expected to last three months or longer where Asta was charged with only three of 58 counts, not including the primary charged scheme. *Stoecker*, 920 F. Sup. at 887-88. The defendant there was distinguishable from Turpin, who is charged with two very serious counts at the heart of the charged indictment – the murder and conspiracy to murder Carlton Weekly – and with directly supporting those counts as an aider and abettor.

In contrast, in the same order granting Asta's motion to sever, the district court in *Stoecker* denied a motion for severance by a different defendant (Pluhar). Pluhar

11

was charged in seven counts and the Court found that virtually all evidence admissible against his co-defendants would also have been admissible against Pluhar in a separate trial. *Id.* at 889. The district court rejected Pluhar's argument that a separate trial was needed because the evidence against the other defendants was essentially stronger and there would be "spillover." *Id.* In denying Pluhar's motion, the district court noted that, in most cases, limiting instructions to the jury would adequately prevent any potential prejudice because "it is presumed that the jurors will follow the court's instructions and consider each defendant separately." *Id.*

Similarly defendant's reliance on *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965) is also unavailing. For background, Echeles, an attorney, represented Arrington in a criminal narcotics trial. Arrington's defense was alibi: Arrington and two witnesses testified that Arrington he was at a hotel out of state during the charged offenses, and one of the witnesses testified to an alleged registration card reflecting Arrington's hotel stay. Then, the government recalled the two witnesses, and they admitted to lying about the hotel. One witness testified he was directed by "the lawyer" to say that the registration card was a document of his hotel. Arrington testified and admitted the hotel registration card was not authentic, but also that Echeles had nothing to do with falsifying the document. Arrington was convicted in the narcotics trial, and exculpated Echeles again in open court at his sentencing hearing. Echeles and Arrington were subsequently charged with suborning perjury with regard to the false alibi, and the district court denied Echeles' motion to sever.

On appeal, the Seventh Circuit noted that Echeles could not properly call Arrington, his co-defendant and former client, during Echeles' case in chief. *Id.* If Arrington were called, only to decline to testify in front of the jury, which was his right, it "would have injected prejudicial error into the record" as to Arrington. *Id.* at 898. In light of "Arrington's record testimony protesting Echeles' innocence, and considering the obvious importance of such testimony to Echeles," the Court held "it was error to deny the motion for a separate trial," particularly given the small number of defendants mean, "it would not be very time consuming but entirely practicable to accord them separate trials." *Id.* at 899-900. In reaching this conclusion, the Court took "special note" of the fact that during the Echeles' and Arrington's joint trial, the government was permitted to offer Arrington's incriminating admissions from the prior narcotics trial against Echeles, but an objection was sustained precluding Echeles from presenting Arrington's statements holding Echeles blameless. *Id.* at 900.

Echeles' situation presented a specific, factually supported danger of prejudice; in contrast, Turpin's motion provides an ill-defined, generalized worry that evidence related to an enterprise, the goals of which he actively assisted, would be prejudicial. This did not satisfy the court in *Stoecker* when considering defendant Pluhar's motion to sever, and it should not satisfy the court here. The defendant has not met his burden that severance is necessary. *Stoecker*, 920 F.Supp. at 884 ("[i]t is *defendant's burden* to show that joint trial will subject him to legally cognizable prejudice, and

13

the court determining whether such showing has been made must balance benefit of judicial efficiency in joint trial with risk of prejudice to defendant.") (emphasis added).

### c. Severance Would Result in Two Nearly Identical Trials

Severing Turpin's trial would not result in judicial economy: it would result in re-trying a nearly identical, five-week trial, with largely the same witnesses and exhibits, twice.

In a hypothetical stand-alone trial for Turpin, the government would have to present the same evidence produced in a trial against the other five co-defendants. Evidence that shows the murder and conspiracy to kill Weekly in aid of racketeering activities, which Turpin is charged with aiding and abetting, occurred. The government would call witnesses to discuss the O-Block enterprise and the other defendant's motives for killing Weekly. Further, the government would introduce evidence that O-Block and THF were "cliqued up" and consequently shared "opps," such that Turpin was both aware of the conflict between O-Block and STL (and Weekly specifically) and that he was allied with one side over the other in that conflict.

Similarly, were the five defendants other than Turpin tried separately from Turpin, their trial would not be substantially shorter. The government would still introduce evidence that Turpin provided Weekly's location and stayed on Oak Street to confirm, in order to provide an explanation for how those defendants knew Weekly was on Oak Street and why they so hurriedly got into their two vehicles and traveled from Parkway Gardens to Oak Street at the particular time they did.

14

## III. Conclusion

Severing trials would only serve to unnecessarily double the time and resources demanded by the court and court staff, the witnesses, and the government. Because such duplication is not required by the law or the facts in this case, defendant's request for a separate trial should be denied.

                                        Respectfully submitted,

                                        MORRIS PASQUAL
                                        Acting United States Attorney

By:    /s/ *Ann Marie E. Ursini*
         JASON A. JULIEN
         ANN MARIE E. URSINI
         CAITLIN WALGAMUTH
         SEAN HENNESSY
         Assistant U.S. Attorneys
         219 South Dearborn, Room 500
         Chicago, Illinois 60604
         (312) 353-5300

**CERTIFICATE OF SERVICE**

      I, Ann Marie E. Ursini, an attorney, certify that I served a copy of the foregoing Government's Response to Defendant's Motions to Sever by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                                   Respectfully submitted,

                                   MORRIS PASQUAL
                                 Acting United States Attorney

By:    /s/ *Ann Marie E. Ursini*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300