UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 21 CR 618 |
| | ) | Honorable Martha M. Pacold |
| CHARLES LIGGINS, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CHARLES LIGGINS' AND CHRISTOPHER THOMAS'
RESPONSE TO THE GOVERNMENT'S *SANTIAGO* PROFFER
AND OPPOSITION TO ITS MOTION TO ADMIT CERTAIN EVIDENCE**

Now come Defendants CHARLES LIGGINS and CHRISTOPHER THOMAS, by their respective counsel, and pursuant to the Due Process, Confrontation Clause and the Federal Rules of Evidence (FRE), including Rule 801(d)(2)(E), hereby responds to the Government's *Santiago* Proffer and Motion to Admit Evidence Pursuant to Federal Rule of Evidence 801(d)(2)(E) (Dkt. #191) (hereinafter "Proffer"):

**I.    THE GOVERNMENT'S PROFFER FAILS TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THE VICAR CONSPIRACY TO MURDER CARLTON WEEKLY CHARGED IN COUNT THREE EXISTED AND THAT CHARLES LIGGINS AND CHRISTOPHER THOMAS WERE MEMBERS OF THAT CONSPIRACY**

The Government's Proffer is insufficient to establish by a preponderance of the evidence that the VICAR conspiracy to murder Carlton Weekly charged in Count Three existed and that Charles Liggins and Christopher Thomas were members of that conspiracy such as to allow admission of evidence against either of these defendants under FRE 801(d)(2)(E)[1].

---

[1] The Government's proffered evidence as to these issues is found primarily at Government Santiago pp. 2-3, 21-56.

We will begin with the most crucial fact: the Government has not proffered any witness who actually was present on Oak Street when Carton Weekly was murdered on August 4, 2020, who identifies either Charles Liggins or Christopher Thomas as being the person or persons who shot and killed Weekly. Equally important, the Government has not proffered any witness to any conversations in which Liggins or Thomas discussed murdering Carlton Weekly or agreed that Carlton Weekly should be murdered.

In a vain attempt to fill this gaping evidentiary hole, the Government asserts that Defendant Turpin "made at least one phone call inside of Milani Boutique to Weekly's rival gang members to come downtown to kill Weekly." (Proffer p. 2). The Government does not assert that it has any documents establishing that such a call was made from Milani or any recording of this alleged call.

Based on a recording of Defendant Turpin on the telephone at the Moncler store, after he left Milani, the Government maintains that Defendant Turpin admitted to making a prior call or calls about Weekly being on Oak Street, including one to Individual F. The Government spends pages setting out its interpretation of Turpin's telephone conversation while in Moncler. (Proffer p. 26-30).

Defendants Liggins and Thomas were not involved in Turpin's telephone conversation and were not at Moncler. They object to the introduction of this recording against them. However, even if the recording is admitted and the Government's interpretation of what was said is accurate, one thing is clear: the Government has no evidence that Defendant Turpin called either Defendant Liggins or Defendant Thomas to tell them "to come downtown to kill Weekly."

The Government also spends considerable time proffering evidence relating to two cars it asserts were involved in the murder. Their proffer includes photos of license plates

2

and video footage of two cars which they claim traveled from Parkway Gardens to Oak Street for the purpose of the Weekly murder. (Proffer p. 23-25). Neither of these two cars belong to Defendants Liggins or Thomas and there is no evidence that Liggins or Thomas were in these cars.

The Government alleges that data from Defendant Roberson's cell phone is consistent with Roberson traveling from Parkway Gardens to Oak Street and back. The Government fails to proffer any similar data from cell phones connected to Defendants Liggins or Thomas establishing any similar travel by Defendants Liggins or Thomas.

The Government devotes pages detailing their theory that one of the cars involved in the Weekly murder was purchased by Defendant Offerd before Weekly's murder and then returned to the dealership by Defendant Offerd after Weekly's murder. (Proffer p. 31-33) Again, even if true, the saga of Defendant Offerd's car and any statements allegedly made by Defendant Offered in connection with the car does nothing to establish that Defendants Liggins and Thomas were involved in a conspiracy to murder Carlton Weekly. Similarly, any statements allegedly made by Defendant Offerd to Witness 6 after the Weekly murder (Proffer p. 33) do not involve Defendants Liggins and Thomas and do not prove their involvement in a conspiracy to murder Weekly.

Similarly, the Government spends several pages (Proffer p. 35-38) talking about a car allegedly belonging to Defendant Roberson that apparently was seized by CPD after the murder on August 4, 2020, Roberson's alleged efforts to get the car back, and Roberson's alleged statements to Witness 7 and Witness 8 about the car. Again, even if true, this evidence does not establish that Defendant Liggins and Thomas were involved in a conspiracy to murder Carlton Weekly.

The Government does proffer that CPD recovered a piece of paper from Defendant

Roberson's car that "appeared to have been written by Liggins" (the Government does not proffer any witness who would so testify) and that contained "contact information for Liggins." (Proffer p. 37). Even if the Government can establish that this piece of paper was written by Liggins and contains his contact information, this piece of paper certainly does not establish in any way that Defendant Charles Liggins was part of a conspiracy to murder Carlton Weekly on August 4, 2020.

The Government proffer includes texts allegedly sent between Defendant Roberson and Cooperator 4 on August 4, 2020. (Proffer pp. 33-34). Again, these texts do not refer to or involve Defendant Liggins or Defendant Thomas. And there is no evidence of any similar such texts being sent by Defendants Liggins and Thomas to anyone on August 4, 2020.

The Government proffers certain statements allegedly made by Defendant Roberson to Cooperator 4 about Defendant Liggins and the Weekly murder several days after that murder. (Proffer pp. 34-35). We will specifically address those statements later in this pleading as they are clearly not admissible against Defendant Liggins and Defendant Thomas.

Most importantly, the Government does not proffer evidence of any statement made by either Defendant Liggins or Defendant Thomas admitting to being involved in the murder of Carlton Weekly.

The Government does proffer their interpretation of a phone conversation allegedly involving Defendant Liggins and Individual H. (Proffer p. 38). The Government claims that in this call Liggins instructed Individual H to tell someone named "Duke" that everyone should get new phones and described the case as "weak" or "nothing." While we disagree with and will dispute the Government's interpretation of this phone

4

conversation, the Government does not characterize this call as an admission by Defendant Liggins to being involved in the murder but as "statements in furtherance of concealment of the conspiracy to murder Weekly." (Proffer p. 38). However, it defies logic to think that telling someone to get new phones on October 14, 2021, is an attempt at concealment of a murder that occurred fourteen months prior.

Moreover, even if the court were to determine that the conspiracy charged in Count Three existed at some point and that the conversation with Individual H was an attempt to conceal the Weekly murder, the statements would not be admissible against Mr. Thomas as they were not made during the course of the conspiracy. *In United States v. Martinez*, 430 F. 3d 317 (6th Cir. 2005) the court held that "statements regarding concealment that are made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (holding that agreement to conceal a completed crime does not extend the life of the conspiracy) *Martinez*, 430 F. 3d at 327."

The court in *Martinez* further stated that " A co-conspirator's participation in a conspiracy ordinarily ends with his arrest for his role in the offense. *United States v. Arce*, 997 F.2d 1123, 1128-29 (5th Cir. 1993); (citation omitted). That is not necessarily true, however, because an arrested coconspirator does not always terminate his involvement in an ongoing conspiracy." *Martinez* 430 F. 3d at 327. The conspiracy the government charges ended on August 4, 2020. It certainly was over in October of 2021.

The only other evidence the Government proffers in their attempt to establish that Defendants Liggins and Thomas were involved in a conspiracy to murder Carlton Weekly on August 4, 2020, are the alleged identifications of Liggins and Thomas in surveillance footage from inside Parkway Gardens. (Proffer p. 3). As discussed in Defendant Liggins'

5

and Thomas' Motions to Suppress and Exclude those identifications, none of the proffered identification witnesses witnessed the murder of Carlton Weekly and none of the proffered identification witnesses were in Parkway Gardens at the time of the events depicted on the surveillance videos. As set out more fully in those motions, the identifications should be suppressed as they were the result of suggestive identification procedures and should be excluded under Federal Rules of Evidence 602, 701 and 403. The arguments contained in those motions (Dkt. 168, 169, 171, 172, 173[3], 174, 179 and 180) are hereby adopted and incorporated herein. However, even if some of these identifications are determined by this Court to be admissible, they are not identifications of Defendant Liggins or Thomas committing the murder of Carlton Weekly.

Finally, the Government proffers evidence and multiple photographs described as relating to "O-Block Chains," "Social Media," and "Tattoos." (Proffer p. 38-55). Although this evidence is within the section titled "The Evidence Demonstrating the Existence of the Charged Conspiracy and the Defendant's Participation in the Conspiracy" the Government does not connect the O-Block chains, social media, or tattoos [4] to the murder of Carlton Weekly. Thus, it does nothing to establish a conspiracy to murder Carlton Weekly or the Defendants Liggins' and Thomas' alleged membership therein.

In sum, the Government's proffer fails to establish by a preponderance of the evidence that there was a conspiracy to murder Carlton Weekly and that Defendant Liggins and Defendant Thomas were part of that conspiracy. Consequently, none of the

---

[3] Although still technically on the docket, it appears that the motion at Dkt. #173 is moot as the Government will not be offering the evidence described therein.
[4] Defendants Liggins and Thomas object to introduction of this evidence and will assert and argue those objections at the appropriate time.

proffered coconspirator statements are admissible against Defendants Liggins and Thomas under FRE 801(d)(2)(E).

**II. THE GOVERNMENT'S PROFFER FAILS TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT THE O-BLOCK STREET GANG WAS AN ENTERPRISE ENGAGED IN RACKETEERING ACTIVITY AT THE TIME OF CARLTON WEEKLY'S MURDER AS REQUIRED TO ESTABLISH THE VICAR CONSPIRACY CHARGED IN COUNT THREE**

The Government's *Santiago* submission also proffers evidence it claims will establish that the "O-Block Street gang" was an enterprise engaged in racketeering activity as required to establish the VICAR conspiracy charged in Count Three as well as all the other charges. (Proffer pp. 3-10).

It appears that the Government's will attempt to establish that the charged enterprise existed and engaged in racketeering activity through the testimony of two paid informants (Cooperator 1 and Cooperator 2) and a member of an alleged rival gang (Cooperator 3). In addition to their obvious biases, a review of their testimony as proffered by the Government and in the discovery provided to date calls into question these witnesses' actual personal knowledge and ability to provide adequate foundation for their testimony as well as the relevance and admissibility of their testimony, both particularly as to Defendants Liggins and Thomas and also as to the charges generally. These objections cannot be detailed here but will be raised appropriately before or during the witnesses' testimony at trial.

In addition, it appears that the Government will attempt to introduce testimony from Cooperator 3 regarding at least three additional murders: the murder of Odee Perry, the murder of Dale Fischer, and the murder of Gakirah Barnes. (Proffer p. 7-9). Based on discovery we anticipate that Cooperator 3's testimony may also involve reference to a

fourth murder, the murder of Shondale Gregory which preceded the murder of Odee Perry. Defendants Liggins and Thomas will be objecting to the admissibility of such testimony in their Response to the "Government's Motion to Admit Certain Acts as Direct Evidence of Charged Offenses or, in the Alternative, Pursuant to Federal Rule of Evidence 404(b)" (Dkt #209).

However, at this juncture we would note the critical fact that there is no evidence that Defendant Liggins or Defendant Thomas were involved in any of these four murders.

Thus, regardless of the evidence described in the *Santiago* proffer, the Government's actual admissible evidence will be insufficient to establish the charged enterprise or its engagement in racketeering activity as required for each of the counts in the Superseding Indictment, including but not limited to Count Three. Defendants Liggins and Thomas hereby preserve and reserve their right to object to the admission of all such evidence contained in the Government's *Santiago* proffer at or before the time such evidence is offered[5].

Moreover, none of the evidence proffered by the Government regarding the alleged existence of the charged enterprise and its purported engagement in racketeering activity establishes the conspiracy to murder Carlton Weekly charged in Count Three upon which the Government has offered certain co-conspirator statements. Thus, the evidence of the existence of that conspiracy and Defendant Liggins and Thomas's membership in that conspiracy, which is required for admission of co-conspirator statements under FRE 801(d)(2)(E), remains insufficient.

---

[5] This includes but is not limited to the Government's proffer of the testimony of Cooperators 1, 2, and 3 as well as evidence regarding a song entitled "Dead Bitches." (Proffer pp. 3-10).

### III. DEFENDANTS LIGGINS AND THOMAS OBJECT TO THE ADMISSION OF CERTAIN IDENTIFIED STATEMENTS AS THEY WERE NOT MADE DURING AND IN FURTHERANCE OF THE CONSPIRACY

Even if this Court concludes that the Government has proffered sufficient evidence to establish the charged VICAR conspiracy to murder Carlton Weekly and the membership of Defendants Liggins and Defendant Thomas in that conspiracy by a preponderance of the evidence, the Court must further determine whether the statements proffered by the Government satisfy the "during and in furtherance" requirement of FRE 801(d)(2)(E).

#### A. THE "IN FURTHERANCE OF" REQUIREMENT

Under Rule 801(d)(2)(E), a hearsay statement made by a co-conspirator may be admitted into evidence only if the government shows (1) a conspiracy existed at the time of the conversation; (2) the defendant and the declarant were both members of the same conspiracy; and (3) the proffered statements were made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States,* 483 U.S. 171, 175 (1987); *United States v. Gajo*, 290 F.3d 922, 928 (7th Cir. 2002). The Government has the burden of proving each of these elements by a preponderance of the evidence. *See Bourjaily,* 483 U.S. at 175.

Rule 801(d)(2)(E) is a "limitation on the admissibility of coconspirators' statements that is meant to be taken seriously." *United States v. Johnson,* 927 F.2d 999, 1001 (7th Cir. 1991) (quoting *Garlington v. O'Leary,* 879 F.2d 277, 283 (7th Cir. 1989). Therefore the court must look carefully to determine whether the particular statement was made during the course of and in furtherance of the conspiracy.

A co-conspirator's statement can satisfy the "in furtherance" requirement "when

the statement is 'part of the information flow between conspirators intended to help each perform his role.'" However, "narrative declarations, mere 'idle chatter,' and superfluous casual conversations are not statements in furtherance of a conspiracy." *United States v. Doerr,* 886 F.2d 944, 951 (7th Cir. 1989); *Johnson,* 927 F.2d at 1002. Additionally, "A statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy; instead the statement must 'somehow advance the objectives of the conspiracy.'" *United States v. Mitchell,* 31 F.3d 628, 632 (8th Cir. 1994)(finding an abuse of discretion in admitting statements); *United States v. Urbanik,* 801 F.2d, 692, 698-99 (4th Cir. 1986)(reversing conviction for admission of coconspirator statement not in further of conspiracy.)

In *United States v. Santos,* 20 F.3d 280, 286 (7th Cir. 1994) the Seventh Circuit rejected hearsay evidence of a prior conversation when it found that the statements were no "part of any normal informational flow between coconspirators." Instead, the coconspirator was "merely commenting on [the defendant's] past activities and did not intend his remarks to further any objectives of his own scheme with [the defendant]." *Id*. The Court found that the statements "were best described as narrative discussions of past events, which do not satisfy the 'in furtherance' requirement of Rule 801(d)(2)(E)." *Id. See, also United States v. Warman,* 578 F.3d 320, 338 (6th Cir. 2009)(statements implicating defendant as partner in cocaine trade constituted "bragging" and "idle chatter" not in furtherance of conspiracy); *United States v. Cornett,* 195 F.3d 776, 783-85 (5th Cir. 1999)(although conversation between co-conspirators "touch[ed] upon the conspiracy" it constituted "mere idle chatter" not in furtherance); *United States v. Doerr,* 886 F.2d 944, 952 (7th Cir. 1989)(district court erred in admitting hearsay that constituted a "narrative discussion of a past event" and "cannot be characterized as part of the normal

information flow between conspirators and in no way furthered the ends of the conspiracy"); *United States v. Lieberman,* 637 F.2d 95, 102 (2d Cir. 1980)("the conversation...smacks of nothing more than casual conversation about past events. It is difficult to envision how it would have furthered the conspiracy."); *United States v. Eubanks,* 591 F.2d 512, 520 (9th Cir. 1979) (a "casual admission of culpability to someone [the declarant] had individually decided to trust" is not in furtherance of the conspiracy, hearsay statements did not "induce individual to join the conspiracy" or "assist the conspirators in achieving their objectives" and thus were inadmissible as "casual admission of culpability").

B. DEFENDANTS LIGGINS AND THOMAS OBJECT TO THE ADMISSION OF STATEMENTS ALLEGEDLY MADE BY DEFENDANT ROBERSON TO COOPERATOR 4 AS THEY WERE NOT MADE IN FURTHERANCE OF THE CONSPIRACY

At pages 25-26 of their *Santiago* Proffer the Government proffers text messages allegedly exchanged between Defendant Roberson and Cooperator 4 during the time the Government claims that Roberson was on Lake Shore Drive nearing Oak Street.

At pages 34-35 of their *Santiago* Proffer the Government proffers statements allegedly made by Defendant Roberson to Cooperator 4 several days after the murder of Carlton Weekly, specifically including statements allegedly made by Roberson claiming that Defendant Liggins was involved in the murder of Carlton Weekly, that Defendant Liggins shot a woman who was shooting at Roberson during the murder, and that Defendant Liggins offered Roberson an O-Block chain after the murder.

The statements allegedly made by Roberson to Cooperator 4, including these statements about Defendant Liggins, are not admissible as co-conspirator statements. Even if this Court finds that there was a conspiracy to murder Carlton Weekly and that

both Roberson and Liggins were members of that conspiracy, these statements are clearly not "in furtherance of that conspiracy."

Filed simultaneously herewith is an Under Seal Exhibit containing information regarding Cooperator 4. This information clearly establishes that any conversation between Defendant Roberson and Cooperator 4, particularly the conversations allegedly occurring after the murder of Carlton Weekly, cannot possibly satisfy the requirement that co-conspirator statements must be in furtherance of the conspiracy. Therefore, these statements should not be allowed into evidence at trial of this case.

### IV. DEFENDANTS LIGGINS AND THOMAS RESERVE ALL OBJECTIONS TO ADMISSIBILITY OF STATEMENTS OFFERED UNDER FRE 801(d)(2)(E) INCLUDING ON THE GROUNDS THAT THE CONSPIRACY AND DEFENDANTS' MEMBERSHIP HAVE NOT BEEN SUFFICIENTLY ESTABLISHED AND OR THAT SUCH STATEMENTS (1) WERE NOT MADE BY A DECLARANT WHO IS A MEMBER OF THE CHARGED CONSPIRACY WITH THE DEFENDANT, (2) WERE NOT MADE DURING THE CONSPIRACY, AND/OR (3) WERE NOT MADE DURING THE COURSE OF AND IN FURTHERANCE OF THE CONSPIRACY

As the Government admits, the Governments *Santiago* proffer does not purport to identify all of the statements that they intend to offer as coconspirators statements. (Proffer p. 57). Moreover, even if the Court at this juncture rules that the Government's proffer sufficiently establishes the charged conspiracy and the Defendants' membership therein the evidence at trial may ultimately prove insufficient. In addition, only at trial will the defense be able to discern and argue whether the evidence is sufficient to establish that a particular declarant is a member of the charged conspiracy with the defendant, whether the particular statement is made during the course of that conspiracy, and whether the particular statements is in furtherance of the conspiracy, as such a determination generally requires that the statement be placed in the context of the

witness's entire testimony.

Therefore, Defendants Liggins and Thomas cannot at the present time fully raise and argue these objections as to any specific statement the Government may seek to offer under FRE 801(d)(2)(E), and therefore reserves the right to make any and all such objections at a time when such determinations can most efficiently be made.

Defense Counsel for Defendants Liggins and Thomas will attempt to identify such statements prior to any particular witness's testimony and bring the issue to the Court's attention prior to that witness taking the stand. However, we respectfully request that the Government be required to identify any specific statement that it knows will be offered pursuant to FRE 801(d)(2)(E) as soon as possible and at the latest before the witness takes the stand so that Defense Counsel have the opportunity to timely make appropriate objections and the court has the time to hear argument and rule.

## V. DEFENDANTS LIGGINS AND THOMAS RESERVE ALL OBJECTIONS TO ADMISSIBILITY OF STATEMENTS OFFERED UNDER ALTERNATIVE BASES OF ADMISSIBILITY

In its Proffer, the Government suggests that various statements may be offered under alternative evidentiary bases rather than as coconspirator statements under FRE 801(d)(2)(E). The Government then presents a general legal discussion regarding admissibility of a defendant's own statements, non-hearsay statements, and statements against penal interest. (Proffer p. 17-20).

Since the Government has not identified any particular statement being offered under these alternative bases of admissibility, Defendants Liggins and Thomas are unable to respond at this time.

Consequently, Defendants Liggins and Thomas reserve all objections to admissibility of any such statements offered under these alternative bases and, further,

does not concede the accuracy of the Government's general legal discussion of those bases of admissibility contained in its Proffer.

## VI. CONCLUSION

WHEREFORE, Defendant Charles Liggins and Defendant Christopher Thomas respectfully request that this Court find that the Government's *Santiago* Proffer is insufficient and deny the Government's Motion to Admit Evidence Pursuant to Federal Rule of Evidence 801(d)(2)(E).

Respectfully submitted,

*/s/Cynthia Giacchetti*

/s/Gregory Mitchell
Attorneys for Defendant Charles Liggins

*/s/Ellen R. Domph*

*/s/Keith Spielfogel*
Attorneys for Defendant Christopher Thomas


CYNTHIA GIACCHETTI
53 W. Jackson Blvd-Suite 1035
Chicago, Illinois 60604
312-939-6440

GREGORY T. MITCHELL
19150 Kedzie Avenue-Suite 205
Homewood, Illinois 60430
709-799-9325

Ellen R. Domph
53 W. Jackson Blvd., Suite 1523
Chicago, IL 60604
(312) 922-2525

Keith Spielfogel
190 S. LaSalle St., Suite 540
Chicago, IL 60603
(312) 236-6021

**<u>CERTIFICATE OF SERVICE</u>**

I, ELLEN R. DOMPH, Attorney at Law, hereby certify that I caused to mailed/hand delivered/**electronically mailed** /faxed/copies of the attached RESPONSE in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers on the 14th day of September 2023.

/S/Ellen R. Domph