UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 21 CR-618 |
| v. | ) | |
| | ) | |
| | ) | Honorable Martha M. Pacold |
| CHRISTOPHER THOMAS, | ) | |
| CHARLES LIGGINS, | ) | |
|     Defendants. | ) | |

**DEFENDANTS' CHRISTOPHER THOMAS' AND CHARLES
LIGGINS' RESPONSE TO GOVERNMENT'S
CONSOLIDATED MOTIONS IN *LIMINE* (DOC. 238)**

Now comes defendants Christopher Thomas and Charles Liggins through their respective counsel, and hereby respond to the government's Consolidated Motions in *Limine*. *(*Dkt. 238*)* as follows:

## I.   ADMIT THE CAMTASIA COMPILATION

The government has moved in *limine* to admit the Camtasia Video. That video has been previously provided to the court. It is listed as Exhibit 1 in the Government's Preliminary Exhibit List. The defense reserves the right to object at trial to the inability of the government to provide a sufficient foundation for the introduction of Exhibit 1.

On August 25, 2023 defendants Thomas and Liggins filed their Motion in *Limine* To Delete The Written Descriptions Added To The Camtasia Video (Dkt. 218). In that motion defendants enumerated numerous written descriptions that were added by the CPD to the compilation of surveillance videos contained in Exhibit 1. The defendants requested that the government be ordered to remove those descriptions.

The government cites the case of *United States v. White*, 737 F.3d 1121 (7th Cir. 2013) as setting forth the rules to be applied under F.R.E. 1006. In *White* the court

1

distinguished between the two main ways that a party can summarize complex documents at trial. An exhibit admitted under Rule 1006 constitutes substantive evidence. An exhibit admitted under Rule 611(a) is meant to facilitate the presentation of evidence already in the record. Exhibits admitted under Rule 611(a) are not substantive evidence. They are summaries meant to aid the jury in understanding the evidence that has been admitted. The court in *White* held that "Because a Rule 1006 exhibit is supposed to substitute for the voluminous documents themselves, however, the exhibit must accurately summarize those documents. It must not misrepresent their contents or make arguments about the inferences the jury should draw from them." *Id*. at 1135. The court drew the further distinction between exhibits admitted under Rule 1006 and Rule 611(a) in stating that since exhibits admitted under Rule 611(a) are not substantive evidence "Rule 611(a) charts can be more one sided in their presentation of the relevant information. For instance, such exhibits may 'include witnesses' conclusions or opinions,' or 'reveal inferences drawn in a way that would assist the jury." *id* at 1135.

In our case, as in *White*, the government seeks to admit Exhibit 1 under Rule 1006 as substantive evidence. In *White* the court held the summary admitted by the trial court met the requirements of Rule 1006. In doing so the court specifically noted, "in the course of three sidebar conferences dealing with the chart's admission, the district court took extensive steps to ensure that the document contained no argumentative labels or phrasing (for instance, the government could not refer to the selected transactions as "bailouts" or describe the characteristics as "suspect"), and the court forbade the government from using the chart's preparer to explain the significance of the characteristics on the spreadsheet or to explain to the jury what inferences it should draw from it. *See Milkiewicz, 470 F.3d at 398* & n.16 (finding that the district court exercised its discretion with "meticulous care" when it took similar steps to excise prejudicial

content prior to Rule 1006 summary's admission)." *Id* at 1136.

The government states in its motion that despite the fact that it will be calling the CPD officer who created Exhibit 1, the written additions are still necessary to direct the jury's attention to certain individuals and vehicles so that they are "oriented" within the video. This is the very thing the *White* court forbade. The government invades the purview of the jury with this argument. It underestimates the ability of the persons who will be selected as jurors. Clearly, they will be able to notice a car or a person in the video without a label telling them they're looking at a car or person. The government states it will redact the word "Subjects" from the written label "Subjects run out," apparently informing the jury only to observe those who "runs out." This, however, is something the jury can see for themselves.

The court should ensure that Exhibit 1 contains no written descriptions from which the jurors can draw inferences unfavorable to the defense. Exhibit 1 is the evidence. If admitted it will speak for itself. Added descriptions are not evidence, are unfairly prejudicial to the defense, and are wholly unnecessary. They should be redacted from Exhibit 1.

## II. PRECLUDE EVIDENCE OR ARGUMENT RELATED TO PENALTIES FACED BY DEFENDANTS

Defense counsel is aware of the rules regarding possible penalties faced by their clients and will abide by those rules.

## III. PRECLUDE EVIDENCE OR ARGUMENT RELATING TO MENTAL DEFECT, INSANITY OR PUBLIC AUTHORITY

Defense counsel is aware of the rules regarding notice of mental defect, insanity, and  public authority and will abide by those rules.

## IV. ALLOW LIMITED EVIDENCE OF DEFENDANTS' INCARCERATION DURING THE CHARGED RACKETEERING CONSPIRACY

The government does not indicate in its filing that it intends to attempt to introduce any evidence of Mr. Thomas having been in custody during the charged conspiracy. Should the government's position change, the defense will make the appropriate objections at that time.

As to Mr. Liggins, the government seeks to admit evidence of Mr. Liggins' phone call on October 14, 2021 while he was incarcerated. As an initial matter, the government erroneously asserts that the phone call made on October 14, 2021, while Mr. Liggins was in pretrial detention on this case, was made during a time of the charged conspiracy. There is no allegation in the charges of that fact, nor is there any factual or evidentiary basis for this Court to find that the charged criminal enterprise continued to exist after August 4, 2020, or that it continued on October 14, 2021.

The government cites to *United States v. Lashmett*, 965 F.2d 179, 184-85 (7th Cir. 1992), to support their argument for admission. *Lashmett*, however, is inapposite. There, the government argued that the defendant's incarceration at the time of the jail call was evidence to prove his motive for employing others to carry out the criminal scheme he administered from prison through a series of phone calls. Here, the October 14, 2021 attributed to Mr. Liggins, is not linked temporally, nor contextually with any alleged conduct charged in the superseding indictment. It occurred over a year after the murder of Mr. Weekly. Additionally, the content of the call-suggesting people get new phones- "everyone needs new phones"- a year plus after the murder cannot be reasonably connected to the murder. It is too tenuous and carries no probative value.

Moreover, by allowing the government to directly or indirectly inform the jury that Mr. Liggins was incarcerated on October 14, 2021, following the charged offense in this case, would not fill any "chronological and conceptual void" in the government's case that focuses on the August 4, 2020, murder of Carlton Weekly. Thus, it is not relevant. Mr. Liggins further

4

submits that the probative value of the evidence that he was incarcerated at the time of the call, is outweighed by its highly, unfair prejudicial effect. Fed.R.Evid. 403.

In the event the court nonetheless decides that such evidence should be admitted, Mr. Liggins submits that it should be admitted subject to the conditions set forth in *United States v. Lashmett*, 965 F.2d at 185, namely, that (1) the government does not call attention to the incarceration; (2) the jury is not given the underlying reason for the defendant's incarceration or comment made as to his criminal background; and (3) the jury is provided with a limiting instruction. In this case, we would ask such instruction to include the fact that Mr. Liggins had been arrested in this case and was not serving a custodial sentence.

As to Mr. Thomas, the government has given no indication that it intends to introduce evidence that Thomas was incarcerated. Moreover, if admitted by this Court, it is not admissible against Mr. Thomas as described in Mr. Liggins' and Mr. Thomas' Response to the Santiago Proffer. Dkt. 266, pg.5 . In that response Mr. Thomas stated:

> Even if the court were to determine that the conspiracy charged in Count Three existed and that the conversation with Individual H in some way was an attempt to conceal the Weekly murder, the statements would not fit into the co-conspirator statement exception as it was not made during the course of the conspiracy. *In United States v. Martinez*, 430 F. 3d 317 ( 6th Cir. 2005) the court held that " statements regarding concealment that are made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (holding that agreement to conceal a completed crime does not extend the life of the conspiracy) *Martinez*, 430 F. 3d at 327."
> The court in *Martinez* further stated that "A coconspirator's participation in a conspiracy ordinarily ends with his arrest for his role in the offense. *United States v. Arce*, 997 F.2d 1123, 1128-29 (5th Cir. 1993). (citation omitted) *Id*.

The conspiracy the government charges in our case ended on August 4, 2020. It certainly was over in October of 2021.

Mr. Liggins' proffered jail call is not admissible against him at trial as it is not a statement made during the course of the conspiracy or in furtherance of the conspiracy.

## V. ADMIT STATEMENTS OF DEFENDANTS ON RECORDED CONVERSATIONS AND BAR DEFENDANTS FROM ADMITTING NON-INCULPATORY PORTIONS OF RECORDED CONVERSATIONS

The government has not indicated that it intends to admit any recorded conversations of Christopher Thomas. At trial, counsel for Thomas will object to any conversations of purported co-conspirators that counsel believe cannot be considered against Mr. Thomas.

As to Mr. Liggins, the government has indicated that it, "intends to introduce recorded jail calls involving defendants." Dkt. 266, pg.6. The government, however, has not specifically identified which specific jail calls that it intends to introduce nor the parts or sections of the recorded jail calls it intends to introduce. The government also has not identified the length or duration of the portion of each jail call it intends to play, or the "element of the offense" this evidence will be offered to prove. While the government has generally referenced pages 10-21 of the Santiago Proffer [Dkt. 191 at 10-21] which simply argues that "the recordings are admissible as defendants' own statements, co-conspirator statements, and/or statements against penal interest, or direct evidence," this general description of admissibility fails to provide a sufficient bases to bar defendants from seeking the admission of other relevant portions of the same recorded conversations.

Rule 106 of the Federal Rules of Evidence provides that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it"; and under the name "rule of completeness," the principle of Rule 106 has been extended to nonrecorded statements. *United States v. Muoghalu*, 662 F.3d 908, 913 (7th Cir. 2011); *United States v. Price*, 516 F.3d 597, 604–05 (7th Cir.2008); *United States v. Li*, 55 F.3d 325, 329–30 (7th Cir.1995).

Rule 403 codifies the district court's broad discretion to control the admission of evidence. In defining this discretion, Rule 403 instructs the court to balance the probative

value of the evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. *United States v. Khan*, 508 F.3d 413, 417 (7th Cir. 2007). Accordingly, this Court should not, at the pretrial stage, provide the government with an open invitation to selectively choose any particular jail call, and to selectively parse and admit carefully edited jail calls to present to the jury without proper context.

Mr. Liggins requests that the court require the government to first identify the specific statements that it seeks to introduce to prevent the danger of unfair prejudice, confusion of the issues, or misleading the jury, or . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Clearly, jail calls taken out of context will confuse the issues in this case, mislead the jury and create a real danger of unfair prejudice against Mr. Liggins and every co-defendant. Accordingly, Mr. Liggins requests that, in fairness, the government be required to first produce the selected portion of each jail call to Mr. Liggins in order to afford him an opportunity to make the appropriate objections.

## VI.  ADMIT CRIME SCENE PHOTOGRAPHS AND VIDEO AND MEDICAL EXAMINER PHOTOGRAPHS DEPICTING VICTIM

*Proposed Images of Crime Scenes and Autopsies are Minimally Relevant*

In discovery provided to the defense, the government has tendered numerous crime scenes, autopsy, and victim images in the form of photographs and video surveillance. Some of these photographs are extremely graphic and disturbing – showing a bloody body and a deceased individual. It appears from its Consolidated Motions in *Limine* ("motion") it intends to introduce photos from the murder of Carlton Weekly, attempted murder of Davon Brinson, and Cashae Williams, and if experience is a guide, it will seek to admit some of the

7

more graphic and upsetting images.[1] These photographs are unduly prejudicial and of minimal relevance to the case. Thus, they should be excluded under Federal Rules of Evidence 401 and 403.

At trial, there will be no contest as to the manner and means of death of Carlton Weekly, or the gunshot injuries to Mr. Brinson or Ms. Williams. To that extent, the defense most likely will offer to stipulate to testimony from the medical examiner who performed the autopsy on Mr. Weekly.[2] Mr. Thomas and Mr. Liggins have no objection to the drawings used by the medical examiner showing the human body and entry and exit wounds. Toward that end, autopsy photographs are not necessary and do not demonstrate any fact in dispute in the case that is not established by other, better evidence. Thus, the photographs and video images of a bloody body with gunshot wounds are minimally relevant.

They are, however, greatly prejudicial to Mr. Thomas and Mr. Liggins. The decision of whether to allow such images into evidence before a jury is, like all evidentiary rulings, subject to the court's discretion. *United States v. Fleming*, 594 F.2d 598, 607-08 (7th Cir. 1979) ("it is a matter of discretion, and we cannot say it was abused"); *United States v. Infelise*, No. 90 CR 98, 1992 WL 45023 (N. D. Ill. Feb. 5, 1992). The Seventh Circuit has criticized and condemned in unusually strong language the use of such photos when not necessary to a contested issue at trial. *Gomez v. Ahitlow*, 29 F.3d 1128 (7th Cir. 1994); *Ferrier v. Duckworth*, 902 F.2d 545, 548 (7th Cir. 1990). In *Gomez*, the government placed into evidence "gruesome photographs of Perez's body at the scene of the homicide [that] show the gunshot wounds from which he died." *Gomez*, 29 F.3d at 1139. The government claimed that they were properly admitted "because they were corroborative of testimonial evidence and were probative of the

---

[1] Most of the "gory" evidence is that of Mr. Weekly; however, if there are any of Mr. Brinson or Ms. Williams, the same arguments apply.

[2] At this point, counsel still must confer with their clients regarding stipulations.

circumstances of Perez's death." (the same reasoning it uses here in its motion at pages 11-14.) *Id*. The Seventh Circuit rejected that argument because "neither the fact of Perez's death nor the cause of his death were at issue in Mr. Gomez's trial." *Id*. The Seventh Circuit found that "'the only conceivable reason for placing them in evidence was to inflame the jury against [the defendant].'" *Id*. quoting *Ferrier*, 902 F.2d at 548-49.

Likewise, in *Ferrier*, the Seventh Circuit condemned the use of photos of blood spattered on the floor of a bar where the murder occurred as being "inexcusable" in a case in which there was no dispute that the killing occurred, and the defense was whether the defendant was drunk or insane when the killing occurred. "Those issues were not illuminated by the photographs. The only conceivable reason for placing them in evidence was to inflame the jury." *Id*. The court went on to describe other photos introduced at trial showing the wound and the corpse of the victim as "even more lurid and disgusting" than the blood spattering photo. *Id*. (See also *Hill v. City of Chicago*, 2011 WL 2637204 at *2, (Judge St. Eve, NDIL July 6, 2011)(...[T]he manner in which Morgan died is not at issue. As such, Defendants' contention that the photographs are probative as to the nature of the crime scene and the ability for law enforcement to obtain evidence lacks merit).

In this case, it is clear that Mr. Weekly in fact was killed – Mr. Thomas and Mr. Liggins are not denying the fact of death. Likewise, no one is denying the cause of death identified by the medical examiner-multiple gunshot wounds. What is challenged is whether Mr. Thomas and Mr. Liggins are the perpetrators of the murder of Carlton Weekly and/or whether the murders were part of any conspiracy. Nothing in any of the proposed photos, or for that matter, any of the photos of a corpse or wounds of any of the victims disclosed by the government, sheds light on any of those issues. Under Seventh Circuit controlling law admitting this evidence is "inexcusable" and clear error.

*The Photographs and Videos are Substantially More Prejudicial than Probative.*

Even if the photographs or videos of a dying man or a corpse with gaping wounds and blood splatters were somehow relevant to a contested issue, they are clearly inadmissible because their prejudicial impact substantially outweighs whatever probative value they may have. Rule 403 prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Unfair prejudice is often prejudice based on an emotional response to evidence. Federal Rule of Evidence 403, Committee Notes (Rule 403's purpose is to exclude evidence that is prejudicial, that is which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). As the Seventh Circuit case law makes plain, such photos as will be offered by the government here inflame the jury's passions, cause it to be repulsed by the crime, and to seek to punish Mr. Thomas and Mr. Liggins not on the evidence but out of condemnation for the crime, outrage at the disturbing images, and/or sympathy for the victims.

This Court has the discretion to consider alternative methods of proof to the gruesome photos the government seeks to offer as part of the balancing it must undertake in deciding whether the proffered evidence is admissible. Fed. R. Evid. 403, Committee Notes (in making Rule 403 ruling, court should consider "the availability of other means of proof"). The government can rely on the testimony of the medical examiner as to the cause of death of Mr. Weekly or the medical personnel of Mr. Brinson and Ms. Williams who attended their wounds, without resort to photographs of a corpse or graphic wounds. The medical examiner's report has drawings and illustrations showing where the bullets entered and exited the victim's body, and those drawings can effectively demonstrate the cause and manner of death without the unfair prejudice photographs or videos will elicit. Investigators and

responders to the crime scene can describe observations which will support the government's theory of how the murders occurred.

The suggestion raised by the government that the ruling for which Mr. Thomas and Mr. Liggins advocate here would interfere with the prosecution's decisions to try the case in the manner it chooses ignores the central reasoning of *Old Chief*. The Supreme Court noted that the substitution of near equivalent means of proving a fact, does not detract from the government's narrative presentation to the jury of its theory of guilt or its right to prove its case in the manner in which it sees fit. Only when the offering of a stipulation would defeat the government's ability to give its presentation evidentiary depth or deprive the government of the power of its narrative presentation should the offer of a stipulation be rejected. *Id.* at 186-88. Indeed, it was the dissent in *Old Chief v. United States,* 519 U.S. 172 (1997) who thought the government's complaint about proving the case in the manner it sought had merit, and not the majority. *Id.* at 193-96 *(dissenting* opinion). In any event, it is not Mr. Thomas or Mr. Liggins who are limiting the government's prejudicial presentation, it is the requirements of Rule 403. Rule 403 places substantive limits on all types of unfair prejudicial evidence that the government may choose to offer for a multitude of reasons-- juror confusion, cumulative evidence, delay, and unfair prejudice, to name a few. This evidence should be excluded.

## VII. ADMIT RECORDS AS SELF-AUTHENTICATING PURSUANT TO RULES 803(6), 902(11), & 902(13)

In this part of the government's Motion *in Limine*, the government asks this Court to admit records received in response to search warrants from Meta/Facebook and Instagram as self-authenticating business records pursuant to certifications under Rule 902(11) and 902(13). The government states that it intends to introduce selected portions of these records. While some of the materials have been referenced in the government's *Santiago* proffer (Dkt.

191) they have not yet been provided in exhibit form. The defense does not know exactly which selected portions of the voluminous Meta records the government is referring to.

In their Motion *in Limine*, the government claims that these Facebook materials are simply business records that can be self-authenticated by a certification setting forth the foundational predicate required for business records under Rule 803(b). Tellingly, the cases cited by the Government do not involve Facebook materials. A review of cases actually dealing with Facebook and other social media materials indicates that the content of Facebook accounts, although produced by Facebook, is not self-authenticating and a certification under Rule 902 is insufficient for their admission.

In *United States v. Browne,* 834 F.3d 403 (3rd Cir. 2016) the Court of Appeals for the Third Circuit held that Facebook chat logs could not be admitted based upon a Rule 902(11) certification. After analysis, the Court concluded that such Facebook materials are not business records under Rule 803(b) and therefore are not self-authenticating under Rule 902. *Id*. at 408, 411.

The Court initially noted that a Facebook records' custodian cannot establish the authorship of Facebook chats for purpose of determining authenticity or relevance; the custodian can only attest that the communications took place. The Court then explained that the business records exception applies to records that are likely accurate and reliable because the business has an underlying procedure to check accuracy and reliability. *Browne,* 834 F.3d at 409-410. However, "Facebook does not purport to verify or rely on the substantive contents of the communications in the course of its business." *Id*. at 410.

The Court acknowledged that Facebook may be able to confirm that a communication "took place between certain Facebook accounts, on particular dates, or at particular times." *Id*. at 410-11. However, the Court held that:

This is no more sufficient to confirm the accuracy or reliability of the contents

12

> of the Facebook chats than a postal receipt would be to attest to the accuracy or reliability of the contents of the enclosed mailed letter. *See United States v. Jackson,* 208 F.3d 633 (7th Cir. 2000) (holding that Internet Service Providers' ability to retrieve information that their customers posted online did not turn the post that appeared on the website of a white supremacist group into the ISP's business records under Rule 803(6))[.]

*Id.* at 411 (additional citations omitted). The Court concluded that "in their entirety the Facebook records are not business records under Rule 803(6) and thus cannot be authenticated by way of Rule 902(11)." *Id.* at 411.

Faced with this very same issue, Judge Blakey in the case of *United States v. Blackman*, 18 CR 728, (Dkt 404, April 27, 2023) recently held as follows:

> The Government asks the Court to admit certain records as self-authenticating pursuant to Rules 803(6), 902(11), and 902(13). Defendant Turman objects, arguing that Facebook records cannot be authenticated via Rule 902 certification alone. The Court agrees, and therefore denies the motion as to the Facebook records. The Government must authenticate the records pursuant to the rules of evidence (including Rule 901) at trial. *See United States v. Lewisbey*, 843 F.3d 653 (7th Cir. 2016) (affirming authentication pursuant to Rule 901); *United States v. Browne*, 834 F.3d 403 (3d Cir. 2016) (finding Facebook records not self-authenticating under Rule 902).

Other trial courts faced with motions similar to the one filed herein have denied government requests to admit the contents of Facebook and other social media accounts pursuant to Rules 803(6), 902(11), and 902(13). *See United States v. Weber*, 574 F. Supp. 3d 791 (D. Mont. 2021); *United States v. Miah*, 517 F. Supp. 3d 465, 465-469 (W.D. Penn. 2021).

As to the particular issue of certification under Rule 902(13), the District Court in *Weber* held that Rule 902(13) "by its very terms, applies only to records created via an electronic process. It does not render self-authenticating substantive content created, shared, or stored, by a user of a social media account." *Weber*, 574 F. Supp. 3d at 794. The District Court concluded that 902(13) is intended to cover evidence generated by an automated electronic process not "records created by a human that are stored in electronic format." *Id.* at 794-795.

13

In addition, the various Facebook content offered by the government cannot be admitted until this Court addresses whether the government has presented sufficient evidence to establish the ownership of the accounts, the identity of the authors of the content, the relevance of the content, the admissibility of the content against the particular defendants on trial, the admissibility of hearsay within the content, and issues of probative value versus prejudice under Rule 403.

However, as to the government's motion to use Rule 902 certifications to admit Facebook content, that motion should be denied for the reasons set forth herein.

## VIII. ADMIT WEEKLY'S STATEMENTS AS DYING DECLARATIONS AND/OR EXCITED UTTERANCES, STATEMENTS OF THEN EXISTING PHYSICAL CONDITION, AND STATEMENTS FROM MEDICAL TREATMENT

The government sets forth in its motion that it seeks to admit 30 seconds of an officer's body camera video in which Mr. Weekly is seen lying in the street, covered with blood, twitching and groaning as he suffers through the last few minutes of his life.[3] While he is laying in the street a woman who was shot in the wrist and arm is yelling in the background and police officers are constantly imploring Mr. Weekly to stay still, keep breathing, and to talk to them. Anyone viewing the clip will agree that it is undeniably gruesome.

The government cites numerous theories under which to admit this evidence of Weekly lying in the street, uttering "everywhere, I can't feel" and that a couple minutes later uttering "help me." The government argues that this undeniably gruesome 30 seconds is admissible under F.R.E. 803(2) as an excited utterance, under 803(3) as a statement of a physical condition, under 803(4) as statements pertinent for medical treatment, and under

---

[3] It is believed Mr. Weekly was announced DOA at the time he arrived at Northwestern Hospital minutes after the shooting.

804(b)(2) as dying declarations.[4]

No matter how many rules the government cites, none of them can overcome the irrelevance of these statements under F.R.E. 401, nor can they survive an analysis under F.R.E. 403.

F.R.E. 401 states that evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would without the evidence and (b) the fact is of consequence in determining the action. On page 21 of the government's motion it attempts to make its case for relevance. The government asserts that watching Mr. Weekly die on the street is probative because "his statements are evidence of the crime itself as well as the extent of his injuries, and the manner and viciousness of his murder." The jury in this case will be viewing a video of how Mr. Weekly was shot on Oak Street. They will be told by a medical examiner that he was shot in the neck twice, shot in the chest, shot four times in the back, shot in the right buttock, shot in the left buttock, shot in the left upper arm, shot two times in the left thigh, shot in the right thigh, and shot in the right lower leg. Mr. Weekly's statement of where he was hit does not make a fact of consequence more or less probable. The extent of his injuries and the viciousness of his murder will be established by the video before the jury and in the detailed testimony they will hear from the medical examiner.

The issue in this case is whether the defendants participated in the murder of Mr. Weekly. None of the words uttered by Mr. Weekly as he lay in the street dying are even minimally relevant. They reveal nothing about who was responsible for his shooting: no name, no description of a possible offender or vehicle, and no information that the police could use to develop leads in his shooting. Despite this fact, the government posits that by uttering "everywhere" Mr. Weekly is providing evidence of the number of shooters, the

---

[4] Mr. Thomas and Mr. Liggins are not conceding that any of these rules support admission. He is saying that no matter the rule, the evidence is irrelevant to any issue in the case.

identity of defendants, and their motivation to murder him. Dkt. 238, pg. 21. With all due respect, that is not in the ballpark of being accurate.

If deemed relevant in some way by this Court it should be excluded under Rule 403. F.R.E. 403 states that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice…" "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.' " *United States v. Gibbs,* 182 F.3d 408, 429 (6th Cir.1999) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)). Any probative value these statements may have are substantially outweighed by the danger of unfair prejudice to defendants Thomas and Liggins. They are being offered only to inflame the jury, which is plainly unfair prejudice.

The cases are legion holding that whether to admit evidence under Rule 403 is left to the sound discretion of the trial court. Each factual situation calls for a separate analysis. The court has been (or will be) provided with a copy of the 30 second video at issue in this motion. The court will determine after viewing the video whether it is of a nature that will inflame the jury and distract it from the issue it is being called upon to decide thus increasing the potential that it would lead to a decision on an improper basis. Considering the lack of probative value that can be attributed to the proposed video and considering the resulting unfair prejudice the images in the video will cause, the government should be precluded from introducing it into evidence.

## IX. BAR DISCOVERY REQUESTS OR COMMENTS REGARDING DISCOVERY IN THE JURY'S PRESENCE

Counsel agrees that neither party should raise discovery issues in the presence of the jury.

## X.   PRECLUDE EVIDENCE AND ARGUMENT ABOUT INVESTIGATIVE STEPS NOT TAKEN

Mr. Thomas and Mr. Liggins object to this request by the government. Without knowing every subject that law enforcement witnesses will testify to, it is impossible to detail the areas of cross-examination of those officers. The defense will explore all areas of the investigation that bear on the issue of whether the government has met its burden of proof. The propriety of the questions can be objected to by the government on an individualized basis and the court, exercising its discretion, can rule upon them as they arise at trial.

## XI.  EXCLUDE NON-IDENTIFICATION HEARSAY EVIDENCE

Mr. Thomas and Mr. Liggins have no objection to the narrow basis of this section of the government's motion.

## XII. BAR IMPROPER USE OF AGENTS AND OFFICERS' REPORTS

This motion is premature.  Mr. Thomas and Mr. Liggins object to any blanket pretrial restriction to any line of cross-examination based on a witness's prior statements to law enforcement. Defendants have a constitutional right under the Sixth Amendment to confront the witnesses against him.  Any limitation on such confrontation must be carefully determined by the Court and must be done on a witness- by- witness basis.

The government first requests a general pretrial ruling from the Court that interview reports prepared by law enforcement agents "are not statements of the person being interviewed" under the Jencks Act.  Dkt. 238, at 29.  Even if the government's view of the Jencks Act is correct, which we do not concede, such a  ruling can only be made on a report-by report- basis.  Many interview reports, particularly those written by responsible agents who are taking notes at the time of the interview, hew closely to what the interviewee says.

Moreover, during interviews, witnesses are often asked to confirm or expand upon certain of their statements. In either case, such interview reports would therefore qualify as "a substantially verbatim recital of an oral statement" as defined in the Jencks Act. 18 U.S.C. § 3500(e)(2).

The interview reports themselves generally will not specifically disclose either the accuracy of the agent making the report or whether the interviewee was asked to confirm or expand upon statements made during the interview. Therefore, it is Mr. Thomas' and Mr. Liggins' position that this Court cannot make the blanket ruling requested by the government unless the Court conducts an evidentiary hearing as to each interview to determine the procedures used during that interview as well as the procedures used in preparing each interview report.

However, the need for the Court to hold such hearings appears to be obviated by the government's agreement that (1) the government has and will continue to provide FBI and other investigative reports of potential witnesses to the Defendants even if the government believes that production is not required under the Jencks Act, and (2) the government acknowledges that Defense Counsel may ask a witness whether he or she made a statement that is reflected in a report. Dkt. 238, at 31-32. Thus, the Court need not make a general determination as to whether interview reports qualify as Jencks Act material at this time.

However, the government's discussion of *Palermo v. United States*, 360 U.S. 343 (1959), raises a more serious concern. The government quotes language from *Palermo* describing reports which contain "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions." The government asserts that the reports in this case are like such reports. Its assertions seem to suggest that when its agents prepared witness interview reports in this case those agents did not write reports which accurately reflect what witnesses said, but

18

instead the agents substantially selected particular materials and recorded their own interpretations and impressions.

If this is true, then the concern should not be whether the defense can use these reports in examining government witnesses. The concern should be the nature and extent of, and motive for, the distortion practiced by any law enforcement officials who authored reports that purport on their face to set forth a witness's statements but in actuality set forth the agent's own selective and biased interpretations. If such a procedure in fact has been followed in preparing the witness reports in this case, Mr. Thomas and Mr. Liggins request an evidentiary hearing regarding this issue.

Finally, the government asks this Court to "preclude the defense" from a variety of actions in connection with the reports, most of which seem to be either misrepresenting the nature of the report or trying to introduce the report itself into evidence. Such a ruling is unnecessary. Defense counsel have many years of experience cross-examining government witnesses, including impeaching witnesses based on law enforcement interviews. Defense counsel will follow the Federal Rules of Evidence and the appropriate procedures both as to the nature of their questions to the witnesses and their use of the reports with the witnesses. If it is necessary to perfect impeachment of a witness, defense counsel will call the agent who authored the report, not offer the report into evidence. Moreover, in the event defense counsel believes that an interview report itself can properly be offered into evidence that issue would obviously be ruled on by the Court before the document is admitted and published to the jury. The government's request should be denied.

## XIII. PRECLUDE INQUIRY INTO OFFICERS/AGENTS' NON-SUSTAINED COMPLAINTS

The government has not yet tendered the complaints. The defense reserves the right to

inquire into these complaints at trial. The defense will give the government notice of which complaints, if any, it will seek to admit prior to questioning any witness as to the complaints.

## XIV. ADMIT LAY OPINION TESTIMONY OF AGENTS AND OFFICERS RELATED TO THE IDENTIFICATION OF PEOPLE AND PLACES IN IMAGES, VIDEOS, AND RECORDED CONVERSATIONS

This motion is in part dependent on the government's ability to authenticate the social media data it seeks to admit. Mr. Thomas and Mr. Liggins have addressed the question of authenticity in their response to this motion at section VII.

Additionally, Mr. Thomas and Mr. Liggins object to FBI agents testifying to the identification of persons based on their "observations in this investigation." Those observations do not form a sufficient foundation for identifying the voice of a person in a jail call nor do they provide a sufficient basis for admission of the witness's opinion of who is depicted in certain videos and photographs.

## XV. PRECLUDE CROSS-EXAMINATION REGARDING ARRESTS AND OTHER "BAD ACTS" OF WITNESSES

Counsel for Mr. Thomas and Mr. Liggins, of course, will comply with Federal Rules of Evidence 608(b) and 609. However, Mr. Thomas and Mr. Liggins object to any blanket pretrial restriction to any line of cross-examination based on a witness's arrests and other "bad acts." Defendants have a constitutional right under the Sixth Amendment to confront the witnesses against them. Any limitation on such confrontation must be carefully determined by the Court and must be done on a witness- by- witness basis.

The defense does not quarrel with the general proposition that there are limitations on cross examining witnesses regarding arrests that did not result in convictions. However, there are many potential exceptions to this principle. For example, a witness may provide

information to law enforcement because they have been arrested.  Where an arrest provides a motive for a witness to provide information, cooperate or testify, the Defendants must be allowed to question the witness about such an arrest as it goes directly to motive and bias. In addition, a person who is arrested because of an act going to truthfulness may be questioned about that act under Rule 608(b) even if they are not convicted because the arrest may provide a good faith basis for such an examination.  In other instances, arrests may establish a relevant fact, such as the witness being in a particular area at a relevant time, or being incarcerated on the arrest at a time the witness claims he witnessed a defendant's involvement in criminal activity on the street.

"Bad Acts" similarly can be relevant and admissible for a multitude of purposes.  The witness may have a hope or expectation of leniency as to his bad acts that provides a motive for his testimony and cooperation with the authorities.  The bad act may reflect on truthfulness under Rule 608(b) or may be admissible under Rules 404(b) or 405(b).  Or the bad act may be relevant for other purposes.

The government has indicated that it will disclose to defense counsel arrests and "bad acts" by its witnesses known to the government to the extent they exist. Dkt. 238, at 40.  The government has suggested that Defense Counsel should advise the court outside the presence of the jury as to any arrests and bad acts about which they intend to cross examine the witness before propounding the question.  Counsel do not object to that procedure as to arrests or other bad acts not related to truthfulness so long as it occurs after the witness has completed their direct examination and has been tendered to the defense for cross examination.

The government has not identified any particular witness, arrest, or bad act which presently presents the issues raised in this section of its Motion *in Limine*.  These issues cannot be ruled on generally, pretrial, and in a factual vacuum.  Therefore, this motion is

premature and should be denied.

## XVI.  PRECLUDE FORMS OF ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

Defense counsel for Mr. Thomas and Mr. Liggins are, and have been for decades, officers of the court and members of the Court's bar.  Defense counsel can assure the court that they are aware of the appropriate limitations on argument and will abide by those limitations.

The government should also be precluded from making arguments designed to elicit jury nullification.  The government should not be allowed to persuade the jury to ignore its duty to presume that each of the defendants are innocent and to require the government to prove each of the charges beyond a reasonable doubt by arguing about danger to the community or by exploiting the jurors' fear of physical violence, gangs, guns and drugs.

## XVII.  PRECLUDE THE "MISSING WITNESS" ARGUMENT

Mr. Thomas and Mr. Liggins cannot respond to this motion at this time. The court and the parties will have no idea if a missing witness argument is appropriate until all the witnesses testify.

## XVIII.  LEAVE TO FILE ADDITIONAL MOTIONS

Mr. Thomas and Mr. Liggins have no objection to this motion and likewise seek leave to file additional written motions if necessary.  Additionally, because additional evidentiary issues will inevitably arise with respect to testimony of witnesses and introduction of evidence, they do not waive their right to object to evidence as it is introduced and to raise oral objections prior to and during testimony of a particular witness or introduction of a

particular exhibit.

Respectfully submitted,

/s/ Keith Spielfogel  and s/Ellen Domph
Attorneys for Christopher Thomas

/s/Cynthia Giacchetti and /s/Gregory Mitchell
Attorneys for Charles Liggins

KEITH SPIELFOGEL
190 S. LaSalle St
Suite 540
Chicago, IL 60603
T: (312) 236-6021
spielfogel@sbcglobal.net

ELLEN R. DOMPH
53 W. Jackson Blvd.
Ste. 1523
Chicago, IL 60604
T: (312_ 922-2525
edomph@gmail.com

CYNTHIA GIACCHETTI
53 W. Jackson Blvd-Suite 1035
Chicago, Illinois 60604
312-939-6440

GREGORY T. MITCHELL
19150 Kedzie Avenue-Suite 205
Homewood, Illinois 60430
709-799-9325