UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES LIGGINS, et. al. | No. 21 CR 618<br><br>Honorable Martha M. Pacold |

**GOVERNMENT'S RESPONSE TO DEFENDANT SMART'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN DRILL RAP VIDEOS AND LYRICS**

Defendant Marcus Smart moves to exclude two drill rap music videos and their lyrics: defendant Smart's song, "For Real," and the song, "Still Trappin,'" by Lil Durk featuring King Von. Dkt. No. 219 at 11. The government does not intend to introduce either song at trial so defendant's motion should be denied as moot.

The government does, however, intend to introduce a total of four drill rap music videos and their lyrics (or portions thereof), including a portion of a different song by defendant Smart that includes the lyrics, "dude from 63rd couldn't get back up," and a song by Dayvon Bennett a/k/a King Von called, "Took Her to the O."[1] *See* Dkt. No. 237 (Under Seal Gov't Prelim. Ex. List). For the reasons set forth below, these music videos and their lyrics should be admitted at trial.

---

[1] The government also intends to introduce the music video and lyrics of victim Carlton Weekly's song "Dead Bitches" and portions of a music video and lyrics of defendant Tacarlos Offerd's song "Neva Change." *See* Dkt. No. 237 at 6 (Under Seal Gov't Prelim. Ex. List). Because neither song nor artist is the subject of defendant Smart's motion *in limine*, the government will not address them in greater detail here, although they are also admissible for the reasons set forth below.

## RELEVANT FACTUAL BACKGROUND

As detailed in the government's prior filings, murder victim Carlton Weekly wrote and performed drill rap music under the stage name "FBG Duck." Some O-Block members also made and continue to make drill rap music, including defendant Smart. In their music and accompanying videos, O-Block members often asserted their association with O-Block, bragged about criminal activities or publicly claimed responsibility for acts of violence committed by O-Block, taunted rival gang members, and mocked and disparaged dead opposing gang members and their associates. O-Block members also have used and continue to use social media platforms, including YouTube and Instagram, to promote O-Block and disparage their rivals, including through music.

The government intends to admit a video clip of defendant Smart performing part of his song with the lyrics, "dude from 63rd couldn't get back up," as evidence of his association and familiarity with O-Block, its enterprise, and its racketeering activities. The government also intends to admit Bennett's song "Took Her to the O" and accompanying video as non-hearsay evidence of Weekly's status as a high-profile opposition gang member or rival of O-Block, evidence of defendants' motive to kill Weekly, and their identity as the shooters. Specifically:

### A. Defendant Smart's "Dude from 63rd Couldn't' Get Back Up"

On or about June 21, 2021, defendant Smart posted a 23-second video clip on his Instagram account "muwopfrmdao" that depicts defendant Smart wearing an O-

2

Block chain and smoking what appears to be a rolled cigar or joint.[2] The video was subsequently posted on YouTube on or about July 12, 2021. A copy of the YouTube posting of the video is attached hereto as Exhibit A-1 and the lyrics are attached hereto as Exhibit A-2.[3] A screenshot of the video is attached hereto as Exhibit A-3.

Defendant begins the video by stating, "I made this shit for a cypher but we ain't never do it" before playing an audio recording of part of a song with defendant Smart reciting lyrics that state, amongst other things, "dude from 63rd couldn't get back up."[4] During the clip, defendant Smart sings on top of the song's audio. The Instagram video included text over the video that stated: "Dude from 63d couldn't get back up ya'll fuck with it or naw????" and then "Yeah we had to mask up let me know if y'all wanna hear the rest" with a voting icon with the options "Yes" or "No." Ex. A-1. In the song, defendant Smart identifies himself as "Muwop from the O" (referring to O-Block). He raps disparagingly about a dead member or associate of STL, a rival gang of O-Block who was shot by O-Block members:

> Dude from 63rd couldn't get back up
> Knock the motor out the car, when we spin wrap up.
> Know a boss clapped up, yeah we had to mask up
> Another body that's a plus
> Dunk a n\*gga like I'm Russ…

---

[2] At trial, the government's evidence will establish that Smart used the "muwopfrmdao" Instagram account.

[3] All referenced song lyrics were prepared by an FBI case agent who will testify as to their accuracy at trial.

[4] A cypher is a free-style rap session between several rappers. At trial, a witness will testify as to the meaning of this and other specific words identified in the admitted rap videos.

3

Ex. A-2. Evidence at trial will establish that STL is a rival gang of O-Block that has territory on 63rd Street and St. Lawrence Avenue on the South Side of Chicago. At trial, witnesses will testify that "63rd" Street is a reference to the area controlled by STL. Trial witnesses will also testify that Weekly was a member of STL.

### B. Bennett a/k/a King Von's "Took Her to the O"

The government anticipates evidence at trial will establish that Dayvon Bennett was a member and a leader of O-Block and an associate of defendant Smart, as well as other defendants.[5] Bennett was also a well-known drill rapper who used the stage name "King Von." Presently, King Von has over 3.8 million subscribers to his YouTube channel and the music video "Took Her to the O" has over 218 million views.[6] At trial, witnesses will testify that, in 2020, Von purchased over a dozen custom O-Block diamond pendants worth between $6,000 and $30,000 each for himself and members and associates of O-Block. At trial, evidence will prove that one of the O-Block pendants Bennett purchased was for defendant Smart, and defendant Smart and Bennett visited Icebox, an Atlanta, Georgia jewelry store that made the custom O-Block pendants, on August 10, 2020—six days after Weekly's murder.

On or about February 21, 2020, Bennett released the music video, "Took Her to the O." The music video is attached hereto as Exhibit B-1 and the song lyrics are

---

[5] Bennett was murdered on or about November 6, 2020.

[6] YouTube, King Von – Took Her To the O (Official Video), *available at* https://www.youtube.com/watch?v=hzt31eJTGxo (last visited Sept. 15, 2023).

4

attached hereto as Exhibit B-2.[7] Exhibit B-1 includes the full music video and the government's proposed clip portions. In the video, Bennett raps about bringing a woman back to the "O", referring to O-Block or Parkway Gardens. The song is a fictional account of Bennett shooting and killing Weekly, the ultimate disparagement of Weekly from one of O-Block's leaders. Specifically, in the song, Bennett meets a woman and, while waiting on her to return to his car, Bennett sees that she has "six missed calls" from "Duck." Ex. B-2. In the song, "Duck" then approaches Bennett's car, "picked up a brick, he merched it [swears] on Brick [deceased brother of Carlton Weekly]," and throws a brick at Bennett's car. Bennett responds by shooting "Duck" twice. *Id.* at 1 ("I let off two shots, I hit him in his shit"). The music video depicts a man who physically resembles Weekly a/k/a/ Duck lying on the ground bleeding after the lyrics "let off two shots." Later in the song, the lyrics state: "fuck that n*gga, he from 63rd." *Id.* The lyrics also reference Weekly's deceased brother who was known as "Brick" and disparage Duck by calling him a "big goofy n*gga" and "Goofy."[8] *Id.*

## LEGAL ARGUMENT

Defendant Smart's motion should be denied as moot because the government does not intend to introduce either song he moves to exclude. Dkt. 219 at 11.

---

[7] The government's proposed lyric excerpts are noted in **bold** text and match its proposed music video clips. The government does not intend to publish the unbolded text or remainder of the music video to the jury.

[8] Specifically, the song states "Duck" "picked up a brick, he merched it on Brick" before he threw it at Bennett's car. Ex. A-2. At trial, a witness will testify that "merched" is a term that means swearing on, and typically is used in connection with a deceased fellow gang member or friend. A witness will also testify that "Brick" is an alias of Weekly's deceased brother.

5

Moreover, the defendant Smart and Bennett music videos and lyrics the government plans to admit are admissible, highly probative evidence that is not substantially outweighed by any potential unfair prejudice.

In racketeering and violence in aid of racketeering (VCAR) cases, courts regularly permit the admission of rap videos or lyrics to establish the existence of an enterprise, defendants' association with that enterprise, and the racketeering acts or activity related to that enterprise. *See, e.g., United States v. Bailey,* 2022 WL 2444930, *13 (6th Cir. July 5, 2022) (affirming the admission of four rap videos as "critical evidence" to establish the gang was an enterprise and the racketeering acts related to the enterprise because the rap videos included some defendants "trumpeting their membership" in the gang, describing specific acts committed by the group, and directing threatening messages at rivals); *United States v. Williams,* 2022 WL 1679256, *2-3 (11th Cir. May 26, 2022) (admitting rap videos where defendant appeared alongside other gang members as "highly probative of contested issues at trial: the existence of the [gang enterprise] and of [defendants'] affiliation with the gang and their fellow gang members."); *United States v. Pierce,* 785 F.3d 832, 841 (2d Cir. 2015) (affirming admission of defendant's rap video to prove association with enterprise gang, animosity toward a rival gang member, and motive to participate in the charged conspiracy conduct, including racketeering and VCAR offenses); *see also United States v. Mills*, 367 F. Supp. 3d 664, 670 (E.D. Mich. 2019) (admitting rap videos to establish the existence of the enterprise, defendant's participation in and

6

association with members of the enterprise, and the alleged purposes of the enterprise).

Similarly, the Seventh Circuit has upheld the admission of rap lyrics to establish a defendant's knowledge and familiarity with the charged criminal activity. In *United States v. Foster,* 939 F.2d 445 (7th Cir. 1991)*,* the defendant was arrested with suitcases containing large quantities of narcotics. *Id.* at 449. Also in his possession was a notebook containing a handwritten rap verse that stated "Key for Key, Pound for pound I'm the biggest Dope Dealer and I serve all over town. Rock 4 Rock Self 4 Self. Give me a key let me go to work more Dollars than your average bussiness [sic] man." *Id.* The Seventh Circuit affirmed the district court's admission of the rap verse, and rejected the defendant's argument that the verse was inadmissible because it was merely fictional, artistic expression:

> [R]ecall that the rap verse was not admitted to show that Foster was, in fact, 'the biggest dope dealer'; it was not admitted to establish that Foster was the character portrayed in the lyrics. But in writing about this 'fictional' character, Foster exhibited knowledge of an activity that is far from fictional. He exhibited some knowledge of narcotics trafficking, and in particular drug code words. It was for this limited purpose that the verse was admitted, and it is for this limited purpose that its relevance is clear.

*Id.* at 456; *but see United States v. Price,* 418 F.3d 771, 783 (7th Cir. 2005) (without finding error, noting any error was harmless where rap videos by defendant's fellow gang members were admitted as evidence of drug trade "jargon" because it was made clear at trial that the authorship of the song was unknown and it was not attributed to any of the defendants).

7

Rule 403 allows the Court to exclude otherwise relevant evidence if its "probative value is substantially outweighed" by, among other concerns, unfair prejudice. Fed. R. Evid. 403. Of course, "[a]ll evidence offered by the prosecutor is prejudicial to the defendant," *Foster,* 939 F.2d at 457, but even when rap videos "contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes" including, as charged here, a "violent murder[]." *United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014), *aff'd,* 762 F. App'x 25 (2d Cir. 2019) (finding rap video evidence was not substantially outweighed by a danger of unfair prejudice). Indeed, "[r]ap is no longer an underground phenomenon and is a mainstream music genre. Reasonable jurors would be unlikely to reason that a rapper is violent simply because he raps about violence." *United States v. Stuckey,* 253 Fed.Appx. 468, 484 (6th Cir. 2007) (finding prejudice of song lyrics did not substantially outweigh their probative value).

### A. Smart's "Dude From 63rd Couldn't Get Back Up" Is Admissible

Smart's "Dude from 63rd Couldn't Get Back Up" video and lyrics are admissible statements by a party opponent and highly probative, direct evidence. Its probative value far outweighs any unfair prejudice and it should be admitted at trial.

As an initial matter, statements by a party opponent are not hearsay. Fed. R. Evid. 801(d)(2)(A). Courts have routinely found rap lyrics to be evidentiary "statement[s]" within the meaning of Rule 801(a) notwithstanding the fact they may be "artistic expression." *See, e.g., United States v. Hankton*, 51 F. 4th 578, 601 (5th

8

Cir. 2022) (holding defendant's argument that rap lyrics are not "statements" because they are artistic expression "lacks merit" and noting any interpretation of the lyrics "was within the province of the jury."); *United States v. Herron*, 762 F. App'x 25, 29-30 (2nd Cir. 2019) ("The First Amendment. . . . does not, however, 'prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive and intent.'" (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *United States v. Carpenter,* 372 F.Supp. 74, 78-79 (E.D.N.Y. Feb. 25, 2019) (admitting lyrics as direct evidence of defendant's charged crimes and rejecting as "meritless" defendant's argument that admission violated defendant's First Amendment right to free expression); *see also United States v. Jones, et al.,* 2023 WL 5319244 (7th Cir. Aug. 18, 2023) (affirming admission of defendant's social media posts because "we know of no authority. . . supporting [defendant's] views that the First Amendment shields from consideration statements he made that shine substantial light on his intent and predisposition to commit the crime").

As defendant Smart admitted in his motion, he performed under the name "Muwop." Dkt. No. 219 at 11. At trial, the government will establish that defendant Smart is depicted in the video clip mentioned above and that defendant Smart was the user of the Instagram account ("muwopfrmdao") that posted the video. Further, as captured in the video clip, defendant Smart admits he wrote the song, stating: "I wrote this for a cypher" and then raps on top of the song's audio as it plays. Ex. A-2.

9

Accordingly, the snippet from the song is admissible as defendant Smart's own statement and is not hearsay.[9] Fed. R. Evid. 801(d)(2)(A).

Defendant Smart contends that his own drill rap videos constitute impermissible character evidence. Dkt. 219 at 12. Not so. Defendant Smart's snippet from the song listed above is relevant evidence with significant probative value. *See* Fed. R. Evid. 401. As charged in the superseding indictment, the government is required to prove the existence of the O-Block enterprise and defendant Smart's membership or affiliation with O-Block. Dkt. No. 120 at 2-3. Defendant Smart's lyrics in the above-mentioned clip are direct evidence of his self-identified affiliation with O-Block. The song begins with the lyrics "Muwop from the O," a reference to defendant Smart's nickname and O-Block. Ex. A-2. The video recording captured defendant Smart wearing an O-Block chain. Ex. A-3. As detailed above, the government's evidence at trial will prove that members of O-Block, including defendant Smart, wore custom O-Block pendants to represent their affiliation with the O-Block enterprise.

"Dude from 63rd" is also direct evidence of O-Block's ongoing rivalry with STL and specifically, defendant Smart's knowledge of that rivalry and antagonism of an

---

[9] To the extend defendant claims he did not author the lyrics, they are nonetheless admissible pursuant to Rule 801(d)(2)(B), as an adopted statement because defendant Smart claims he wrote the lyrics, performed the song, and the lyrics themselves reference defendant Smart's nickname. Ex. A-2 ("Muwop from the O"). *See Hankton,* 51 F.4th at 600-01 (admitting rap video into evidence pursuant to Fed. R. Evid. 801 (d)(2)(B) because defendant took "active steps to manifest his approval" of the lyrics of another rapper, including appearing in the rap video and gesturing during the video and appearing during a lyric referencing his nickname and circumstances of a shooting at issue).

STL member or associate's murder. As alleged in the superseding indictment, purposes of the O-Block enterprise included publicly claiming responsibility for acts of violence committed by the enterprise, taunting rival gang members, and promoting the status of O-Block through the use of social media platforms and music. Dkt. No. 120 at 2. At trial, witnesses will testify that "63rd" Street is a reference to the area controlled by STL, a rival gang to O-Block and the gang in which Weekly was a member. The song's lyrics refer to a murdered 63rd Street associate or member. Ex. A-2. Defendant Smart also uses the first person to describe the shooting. Ex. A-2 ("Know a boss clapped up, yeah we had to mask up / Another body that's a plus"). Even if his claim of responsibility for this shooting is fictitious, defendant Smart's statements are evidence of his knowledge and participation in the O-Block enterprise. *See Foster,* 939 F.2d at 456 ("in writing about this 'fictional' character, [defendant] exhibited knowledge of an activity that is far from fictional.").

In support of his argument to exclude his own song, defendant Smart cites three district court cases that are all distinguishable from this case. *See* Dkt. No. 219 at 12-13. In *United States v. Stephenson,* 550 F.Supp.3d 1246 (M.D. Fla. 2021) and *United States v. Johnson,* 469 F.Supp.3d 193 (S.D.N.Y. 2019), the district courts found the rap lyrics were not evidence of the charged offenses, in contrast to the lyrics and videos the government plans to admit here. *Stephenson,* 550 F.Supp.3d at 1250-52 (excluding rap videos uploaded to YouTube before the charged narcotic trafficking offense because, at most, the defendant was rapping about *past* drug dealing and other criminal activity); *Johnson*, 469 F.Supp.3d at 222 (finding lyrics did not contain

11

any direct reference to the gang enterprise or gang activity and were thus "irrelevant"). And, in *United States v. Williams,* No. 3:13-CR-764, 2017 WL 4310712 (N.D. Cal. Sept. 28, 2017), a VCAR case, the district court admitted one defendant's own 15-year old rap lyrics as a party admission against that defendant, *id.* at 6, but precluded the government from introducing non-defendant songs because it had failed to establish a non-hearsay basis for admission. *Id.* at *8. Indeed, the district court noted it was "open to the possibility of allowing . . . certain portions of songs, still images from videos, or excerpts from the lyrics," if it was able to establish a non-hearsay basis for admission. *Id.*

By contrast, Smart's "Dude from 63rd" is relevant, direct evidence of the charged offense. As detailed above, the music video and lyrics demonstrate defendant Smart's affiliation with O-Block ("Muwop from the O, I'm with them get back up"), the charged enterprise, and his furtherance of that enterprise, including by publicly claiming responsibility for an act of violence committed by the enterprise ("yeah we had to mask up / another body that's a plus"), taunting rival gang members ("63rd"), and promoting the status of O-Block through his video. Smart's song is analogous to the admitted rap song in *Williams*, which was admitted as a party admission by that defendant. *Williams*, 2017 WL 4310712, at *8.

Nor is the video, or lyrics, unduly prejudicial under Rule 403. Fed. R. Evid. 403. The video clip itself is only 23 seconds long and does not depict violence or firearms,. *See* Ex. A. The song lyrics contain minimal offensive or profane language. And, as detailed above, it is highly probative, direct evidence of the charged offenses.

12

*See, e.g., United States v. Perry,* 35 F.4th 293, 326-27 (5th Cir. 2022) ("[t]he general conclusion from courts that have considered this type of evidence is that explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative.").

### B. Bennett's "Took Her to the O" is Admissible Evidence

The government also intends to introduce a portion of the rap music video and lyrics of Bennett's "Took Her to the O." This is admissible non-hearsay evidence of O-Block's rivalry with Weekly and Weekly's status as a high-profile STL member. This evidence is relevant and highly probative of defendants' motive to murder Weekly and their identities as the shooters.

The government is not introducing "Took Her to the O" for the truth of the matter asserted; accordingly, the video and lyrics are not inadmissible hearsay. Fed. R. Evid. 801(c). Indeed, "Took Her to the O" is a fictional account of Bennett's shooting of Weekly in a dispute over a woman that was released in February 2020, nearly six months before Weekly's murder.

In "Took Her to the O," Bennett directly disrespects Weekly by rapping about Bennett shooting and killing Weekly. The lyrics identify Weekly by his well-known rap name ("Duck") and refer to him as being "from 63rd." Ex. B-2. Specifically, in the song, Bennett is in his car waiting for a woman and picks up the woman's cell phone to see "[n]ine missed calls, three of them from Mom, other six say 'Duck,'" Ex. B-2. Weekly then shows up on the scene; Bennett and Weekly get into an altercation and

13

Bennett shoots Weekly twice. *See* Ex. B-2 ("I let off two shots, I hit him in his shit / Now Von think quick, what you finna' do? / Cause this gone make the news, got to make your move"). In the music video, a man who looks like Weekly is pictured lying on the ground in a pool of blood. Ex. B-1. It also disparages him by calling him a "big goofy n*gga" and referencing his deceased brother "Brick." Ex. B-2.

The government expects its evidence at trial will establish that Bennett was a leader in O-Block before his death in November 2020. In "Took Her to the O," the chorus references "O" for O-Block, corroborating Bennett's association with O-Block. Ex. B-2. As detailed above, trial witnesses will also testify about the rivalry between O-Block and STL, Weekly's association with STL, and the fact that "63rd" refers to STL territory. Witnesses will further testify that O-Block members were expected to shoot at and kill STL members in order to maintain or increase their status within O-Block, and that killing a high-profile STL member would significantly increase an O-Block member's status. Because Bennett was a leader of O-Block, his song disparaging Weekly is particularly probative and relevant evidence. It helps establish that Weekly was a high-priority opposition gang member and rival of Bennett's, and by extension O-Block. Accordingly, it is strong evidence of defendants' motive to kill Weekly and their identity as the shooters. Among other things, the government must show that defendants committed the murder in other to increase or maintain their position in the charged enterprise, O-Block. Weekly was specifically targeted and brazenly shot on a public sidewalk in broad daylight. Evidence at trial

will show that defendants raced from Parkway Gardens to Oak Street, chased Weekly down and fired repeatedly at him, hitting him 16 times.

Any attempt by Defendant Smart to rely on *United States v. Gamory,* 635 F.3d 480 (11th Cir. 2011) to exclude Bennett's "Take Her to the O" is misplaced. In *Gamory,* the government introduced a complete music video by another rap artist for the purpose of proving the truth of the matter asserted in the lyrics, in violation of the rule against hearsay. *Id.* at 493. The video did not feature the defendant, but it included references to defendant's nickname "JB" and suggested defendant's recording studio was a front for drug trafficking, which was the basis for the defendant's narcotic charges. *Id.* at 493. The government introduced the entire video at the end of the government's case to link defendant to his nickname and his recording studio to the lyric's reference to "drug money," evidence which was "not seriously contested" at trial and cumulative. *Id.* No redactions or cautionary instructions were requested or given. *Id.* at 488. On appeal, the Eleventh Circuit found the video contained inadmissible hearsay and was unfairly prejudicial under Rule 403. *Id.* The Court held the video's lyrics were heavily prejudicial which substantially outweighed the minimal probative value the video served as the facts it purported to support were hearsay and "not seriously contested" at the end of the government's case, when it was introduced into evidence. *Id.* (finding harmless error). By contrast, the government does not seek to admit "Took Her to the O" for the truth of the matter asserted but to evidence Weekly's status as a high-profile opposition member of O-Block, a fact the government will address early in trial and anticipates

the defendants will contest. This particular evidence is not cumulative but rather corroborates some witness testimony that will be heavily contested by defendant. It is also central to key disputed issues like motive and identity of the defendants. Unlike the rap video in *Gamory*, "Took Her To the O" does not reference any of the defendants, by nickname or otherwise. Moreover, in contrast to *Gamory*, the government will admit only relevant clips for the video, and the government is open to a limiting instruction (as detailed below) to mitigate against any unfair prejudice.

The government acknowledges that "Took Her to the O" contains lyrics that may be considered offensive to some, including profanity, sexualized language, misogyny, and references to a firearm and "dope." Ex. B-2. Accordingly, the government intends to admit only portions of the music video and corresponding lyrics that describe "Duck," depict his likeness, and reference opposition gang or STL territory ("63rd") and O-Block, a total of approximately 1 minute 32 seconds of the total 3 minute 30 second music video. *See* Exs. B-1, B-2. The proposed clips also remove repetitive chorus verses that contain potentially offensive misogynistic language or imagery. The clips and corresponding lyrics are highly probative and not substantially outweighed by unfair prejudice to warrant exclusion under Rule 403. While Bennett's song recounts a fictional shooting of Weekly, it does not describe "conduct more inflammatory than the charged crime," where Weekly was shot 16 times by multiple shooters. *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006). Smart and his co-defendants are not referenced in the song and do not appear in the

16

music video so there is little risk that the fictious shooting described by Bennett (six months prior to Weekly's murder) will be unfairly attributed to defendants.

Additionally, the Court may also issue a limiting instruction about the purposes for which the jury may consider the video excerpts to minimize the potential for unfair prejudice. *See Foster,* 939 F.2d at 450 (district court gave contemporaneous limiting instruction about the rap lyric's evidentiary purpose); *see also United States v. Williams*, 2022 WL 1679256, *2 (11th Cir. May 26, 2022) (limiting instruction that defendants were on trial for the charged offense and "not for conduct shown in the videos, even if the jurors might find parts of the videos offensive, profane, or vulgar.").

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court deny defendant Smart's motion *in limine* to exclude certain drill rap videos as moot.

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney

By:   /s/ *Caitlin Walgamuth*
      JASON A. JULIEN
      ANN MARIE E. URSINI
      CAITLIN WALGAMUTH
      SEAN HENNESSY
      Assistant U.S. Attorneys
      219 South Dearborn, Room 500
      Chicago, Illinois 60604
      (312) 353-5300

**CERTIFICATE OF SERVICE**

      I, Caitlin Walgamuth, an attorney, certify that I served a copy of the foregoing Government's Response to Defendant Smart's Motion *In Limine* to Exclude Certain Drill Rap Videos and Lyrics using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                                  Respectfully submitted,

                                  MORRIS PASQUAL
                                Acting United States Attorney

By:    */s/ Caitlin Walgamuth*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300