UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES LIGGINS, et al. | No. 21 CR 618<br><br>Honorable Martha M. Pacold |

**GOVERNMENT'S REPLY TO DEFENDANTS ROBERSON, THOMAS, AND LIGGINS'S RESPONSE TO THE GOVERNMENT'S *SANTIAGO* PROFFER AND MOTION TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(E)**

Defendants Roberson, Liggins, and Thomas have filed responses to the government's *Santiago* proffer and motion to admit evidence pursuant to Federal Rule of Evidence 801(d)(2)(E). Dkt. 266, 267, 273. No defendant disputes the proposition that an admission made by a defendant would be admissible against that defendant as an admission by an opposing party. Defendants either did not address this argument or attempted to defer resolution until a later time. Every statement the government identified in its *Santiago* proffer is admissible on this basis.

The arguments that defendants did make either relate to the sufficiency of the evidence establishing the conspiracy, whether statements were made in furtherance of the conspiracy, or whether the conspiracy ended on August 4, 2020. The government established by a preponderance of the evidence that the conspiracy to commit the VCAR murder of Weekly existed, that defendants were a part of it, and that the statements the government identified by the government were made to further it—even statements made after the day the murder was committed.

### I. Every statement the government identified as having been made by the defendants is admissible as an admission by an opposing party.

At the outset, the government notes that every statement identified in the *Santiago* proffer as a coconspirator statement was a statement made by a named defendant, specifically, statements made by Roberson, Offerd, and Liggins. *See* Dkt. 191 at 58-59. In other words, every statement identified on pages 58 and 59 of the government's *Santiago* proffer is admissible on its face as a statement by an opposing party under Rule 801(d)(2)(A). The government pointed this out in its motion. *See* Dkt. 191 at 17-18.

Roberson does not dispute this. *See* generally Dkt. 273. Liggins and Thomas, on the other hand, while they do not dispute this principle, suggest that the matter is not ripe for resolution because the government indicated that it "may" seek to introduce the statements under alternative bases for admissibility such as 801(d)(2)(A). *See* Dkt. 266 at 13-14. The government was not equivocal in its position. *See* Dkt. 191 at 17, 56 ("Various statements made during the course of a conspiracy are independently admissible and do not require a Rule 801(d)(2)(E) analysis. A defendant's own statements, for example, are admissible against him pursuant to Rule 801(d)(2)(A), without reference to the coconspirator statement rule.") and ("All of the statements identified above as having been made by defendants Liggins, Roberson, Offerd, Thomas, Smart, and Turpin, whether orally to another person, such as to Witness 4, Witness 6, Witness 7, or Cooperator 4, via text message, or on social media, are admissible in evidence as admissions by a party opponent under Rule 801(d)(2)(A).").

Every statement the government identified on pages 58 and 59 of the government's *Santiago* proffer is admissible as against Roberson, Liggins, and Offerd. *See* Dkt. 191 at 58-59. It is not in dispute that Roberson, Offerd, and Liggins are named defendants. The government seeks to introduce the statements that are outlined in the *Santiago* proffer and there is more than one path to their admissibility into evidence, including Rule 801(d)(2)(A) and Rule 801(d)(2)(E).

## II. All of the statements Roberson made to Cooperator 4 regarding Weekly's murder were made in furtherance of the VCAR murder conspiracy.

Every statement the government identified in its *Santiago* proffer regarding Weekly and Weekly's murder that Roberson made to Cooperator 4 was made in furtherance of the VCAR murder conspiracy. Even Roberson does not challenge this. *See* Dkt. 273 at 2.[1] It is unclear if Liggins and Thomas are challenging the statements Roberson made to Cooperator 4 via text message on the way to murder Weekly and in the immediate aftermath (*see* Dkt. 266 at 4, 11-12), but those statements were made in furtherance of the conspiracy. Cooperator 4 was trying to return a gun to Roberson and Roberson directed Cooperator 4 to bring the gun to O-Block instead of bringing it to Roberson because Roberson and his co-defendants were on the way to murder Weekly and shoot Victim 1 and Victim 2. Roberson then began bragging to Cooperator 4 immediately after the murder, first telling Cooperator 4 to check Spot News and then sending Cooperator 4 a link to a news story about the murder. As set

---

[1] Roberson notes that his statements are admissible if they are not hearsay. *See* Dkt. 273 at 2. This is likely a reference to Rule 801(d)(2), as admissions by a party opponent are excluded from the definition of hearsay, as are statements made by a co-conspirator during and in furtherance of a conspiracy. *See* FED. R. EVID. 801(d).

3

forth in the allegations in Count Three of the superseding indictment, among the purposes of the O-Block enterprise was to "promot[e] and enhance[e] the enterprise and its members' and associates' activities, *including by publicly claiming responsibility for acts of violence committed by the enterprise* and taunting rival gang members. Dkt. 120 at 2, 5. That is what Roberson was doing on August 4th after the murder and during his face-to-face confession to Cooperator 4.

Roberson continued to promote and enhance the enterprise days later when he provided additional details (including non-public details) about the murder to Cooperator 4, embellishing his own role in the murder from the role of being a driver to the role of being a shooter. These statements—during which Roberson discussed other O-Block members including "C Murda," having been offered an O-Block chain, and that there was a bounty on Weekly from an O-Block member—were made to promote and enhance the enterprise and in furtherance of the conspiracy. Nothing in the superseding indictment limits the members of the enterprise to only claiming responsibility for acts of violence on the day that they were committed. In fact, as set forth in the *Santiago* proffer, O-Block members continued to claim responsibility for acts of violence that had been committed by the enterprise dating back years (often taunting their rivals in the process).

**III. The statements that Offerd made to Witness 6 and the employee from Midway AutoHaus *after* the murder about returning the Fusion was made during and in furtherance of the conspiracy.**

Roberson challenges that Offerd's statements to Witness 6 and the Midway AutoHaus employee vis-à-vis returning the Ford Fusion were made in furtherance of the conspiracy. Roberson's argument is that Offerd already planned to return the car, so any statements he made after already planning to return the car could not have been made in furtherance of the conspiracy. Dkt. 273 at 9-10. It is true that Offerd had indefinite plans to return the Ford Fusion. But Offerd's plans did not become definite and concrete until minutes after Weekly's murder. Offerd did not communicate to the dealership that Offerd was on the way until nine minutes after murdering Weekly.

Similarly, Offerd did not reach out to Witness 6 on August 4th about returning the car until minutes after Weekly's murder. At that point, the Ford Fusion was an instrumentality of the offense—a hot potato that Offerd needed to get rid of in a hurry. So much so, that Offerd went to the dealership with two of his co-conspirators still in tow: Marcus Smart and Ezell Rawls. Thus, the timing of returning the Ford Fusion became pertinent to concealment in furtherance of the conspiracy. While other statements that Offerd made regarding the Fusion before that point in time may only be admissible against Offerd, once Offerd began attempting to get rid of the Fusion in the aftermath of the murder, Offerd began making statements about returning the Fusion in furtherance of concealment. And to be clear, the government only seeks to

5

admit that limited subset of statements under Rule 801(d)(2)(E). *See* Dkt. 191 at 58-59.

## IV. Liggins's statement that "everybody" should get new phones was made in furtherance of the conspiracy.

Roberson, Liggins, and Thomas challenge the statements that Liggins made during a phone call, during which Liggins instructed Individual H to tell "Duke" to tell "everybody" to get new phones in the immediate aftermath of Liggins and his co-defendants' arrest. *See* Dkt. 273 at 10-11; Dkt. 266 at 4-5. Defendants' argument is that, because this conversation occurred in October 2021, it cannot have been made in furtherance of the conspiracy. *See id.* Electronic evidence on a cellular device does not go bad like a loaf of bread. *See, e.g., United States v. Rees*, 957 F.3d 761, 770 (7th Cir. 2020 ("But we have recognized that evidence contained in computer equipment does not rapidly dissipate or degrade, that child-pornography collections tend to be kept for long periods of time, and that digital information is often retrievable from hard drives even after a user "deletes" it.") (quoting *United States v. Carroll*, 750 F.3d 700, 704-05 (7th Cir. 2014)). Text messages relating to the offense, pictures relating to the offense, and location data relating to the offense does not fade away as the calendar turns a page. But those things do potentially go away when "everybody" is instructed to get new phones. Liggins's instruction that "everybody" needs to get new phones—made against the backdrop of Liggins discussing the charges in this case and Liggins knowing the people he committed the murder with were just arrested along with him—was only made for the purpose of concealment, not for the purpose of upgrading to the latest smartphone.

## V. Other Arguments

Among the arguments Liggins and Thomas made in their response to the *Santiago* proffer, Liggins and Thomas argue that "there is no evidence that Liggins or Thomas were in [the Chrysler or the Fusion]." Dkt. 266 at 3. This argument should color the Court's reading of the remaining arguments in that filing. The Court is aware of the identifications of Liggins and Thomas running to and from Roberson's Chrysler on August 4, 2020. The Court has the video showing Liggins and Thomas exiting Roberson's Chrysler after returning to Parkway Gardens after the murder. Roberson's statements to Cooperator 4 regarding who Roberson committed the murder with ("C Murda") is evidence. Liggins's contact information and social media handles inside of the Chrysler is evidence. In short, there is clear evidence of Liggins and Thomas's involvement in Weekly's murder and the shooting of Victim 1 and Victim 2, and evidence of their membership more broadly in the O-Block enterprise as set forth in the *Santiago* proffer.

Liggins and Thomas also argue that there is no conspiracy established in the *Santiago* proffer because the proffer does not set forth a direct call from Turpin to Liggins or Thomas directly instructing them "to come downtown to kill Weekly." *Id.* at 2. This is a red herring. First, as the government has made clear multiple times, Turpin, who is not an O-Block member, aided and abetting the other five defendants' conspiracy but was not a part of it. *E.g.*, Dkt. 191 at 21. This is why Turpin's statements are not identified as being admissible against all of the defendants under Rule 801(d)(2)(E) (though they are certainly admissible as to Turpin).

7

Notwithstanding, it is well-settled that a coconspirator need not know everyone involved in the conspiracy to be a member of it, nor do they need to participate in all aspects of the conspiracy. *See United States v. Jones*, 993 F.3d 519, 532 (7th Cir. 2021) ("[Other members of a conspiracy] do not need to know, however, all the other coconspirators, nor do they have to participate in all aspects of the conspiracy."); *United States v. White*, 582 F.3d 787, (7th Cir. 2009) ("A coconspirator need not know everyone involved in a conspiracy to be a member of it."). Turpin called one of Liggins's and Thomas's coconspirators. The government does not have to show that Turpin called Liggins or Thomas directly in order to establish that Thomas and Liggins were members of a conspiracy to murder Weekly in aid of racketeering activity. Indeed, a grand jury had already determined that Thomas and Liggins were members of a conspiracy that murdered Weekly in aid of racketeering activity before Turpin was indicted. *See* Dkt. 1. at 5. The government can and will prove that the conspiracy to commit the VCAR murder of Weekly existed, including by the actions of the defendants as depicted on video and the statements from Roberson indicating that there was, in fact, a conspiracy to murder Weekly.

**VI. O-Block was an enterprise engaged in racketeering at the time of Weekly's murder.**

Liggins and Thomas argue in conclusory fashion that the government has failed to establish that O-Block was an enterprise engaged in racketeering at the time of Weekly's murder. *See* Dkt. 266 at 7-8. Defendants offer little to no analysis for this argument. *See id.* As set forth in great detail in the government's *Santiago* proffer,

8

O-Block was an enterprise engaged in racketeering activity and Liggins and Thomas were members of it. Defendant's argument should be rejected.

Relatedly, Liggins and Thomas seem to argue that because they plan to challenge the admissibility at trial of certain evidence set forth in the *Santiago* proffer, such as evidence of racketeering carried out by O-Block as an enterprise, that the government will be unable to establish that a VCAR murder conspiracy existed. *See* Dkt. 266 at 8. These concerns are not relevant to the Court's determination of the admissibility of the coconspirator statements described in the government's *Santiago* proffer. The Court can consider information regardless of its ultimate admissibility at trial in making a preliminary determination on the admissibility of coconspirator statements. *See* FED. R. EVID. 104(a) (courts are not bound by the rules of evidence in deciding preliminary questions regarding the admissibility of evidence); FED. R. EVID. 1101(d)(1) (creating an exception to the rules of evidence for preliminary questions of fact regarding admissibility under Rule 104(a)); *Bourjaily v. United States*, 483 U.S. 171, 176-77 (1987) (confirming application of Rule 104(a) in the context of a preliminary determination on admissibility of co-conspirator statements).

## VII. Conclusion

The government outlined a plethora of evidence that the government will introduce at trial to establish that the charged conspiracy existed. Based upon its proffer, the government respectfully requests that this Court find that the categories of coconspirator statements listed in its proffer are admissible pending the introduction of evidence to support this proffer.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney


By:    */s/ Jason A. Julien*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300

## **CERTIFICATE OF SERVICE**

      I, Jason A. Julien, an attorney, certify that I served a copy of the foregoing Government's Reply to Defendants Roberson, Thomas, and Liggins Response to the Government's *Santiago* Proffer and Motion to Admit Evidence Pursuant to Federal Rule of Evidence 801(d)(2)(E) by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                                  Respectfully submitted,

                                  MORRIS PASQUAL
                                Acting United States Attorney

By:    */s/ Jason A. Julien*
         JASON A. JULIEN
         ANN MARIE E. URSINI
         CAITLIN WALGAMUTH
         SEAN HENNESSY
         Assistant United States Attorneys
         219 S. Dearborn Street, Rm. 500
         Chicago, Illinois 60604
         (312) 353-5300