UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES LIGGINS, et al. | No. 21 CR 618<br><br>Honorable Martha M. Pacold |

**GOVERNMENT'S SUBMISSION REGARDING THE
ANTICIPATED TESTIMONY OF LAW ENFORCEMENT WITNESSES**

During recent trial testimony, law enforcement officers have described visual characteristics of vehicles and persons of interest to their investigation as seen on video and photographic evidence. Defense counsel have periodically objected to such testimony, arguing it is improper "identification" testimony or un-noticed expert testimony. *See* Trial Tr. at 3348:20-3349:8; 3352:10-23; 3353:20-3354:5; 3368:23-3369:1. The Court has appropriately overruled these objections, finding that testimony explaining a witness's observations while reviewing surveillance footage did not amount to identification testimony, was relevant, and was helpful to the jury. by providing context for the visual evidence.[1]

---

[1] *See* Trial Tr. at 3354:16-17 ("[The witness] should be able to what he did in the investigation."; 3361:23-3362:4 ("Yes, ultimately, it is up to the jury to make a call on identification of everything, people, cars, places, all of that. But the solution to that is not to just give them camera footage without any explanation of what it is or where it came from…The solution is to have someone explain where this camera footage came from and what's the context."); 3396:4-13 ("the difference is that here the witness is not actually being asked to determine that this is the same car. He is testifying about his investigative process…he can't make that explanation without referring…that to him appeared to be the car that he saw in the other [clip]."; 3399:5-11 ("I do not think that they rise to the level of identifications. I think it is providing the context for the investigation…I also did an alternative analysis under Rule 701

As the government proffered on November 9, the government intends to introduce testimony, including through Special Agent Christine Case, describing video and photographic exhibits and describing visual characteristics of vehicles and persons across exhibits (but not identifying any particular defendant). This type of testimony is routinely offered and admitted in trials in this district and elsewhere and is helpful to the jury.

I. **Law Enforcement Agents or Other Witnesses May Describe or Narrate Photo and Video Exhibits and Compare Features Across Exhibits.**

Law enforcement or other witnesses may properly describe exhibits to the jury, including distinguishing features of persons or vehicles in those exhibits. Here, Special Agent Case's proffered testimony is that she will describe, but not identify, persons and vehicles in various exhibits, including surveillance footage. This testimony is proper, is not "identification" or expert testimony, and is helpful to the jury and should be permitted.

**A. Descriptive Testimony is Not "Identification" Testimony Unless and Identification is Made**

Testimony describing surveillance footage is not identification testimony unless there is an identification. *Cf. United States v. Lowe*, 502 F. Supp. 3d 1332, 1335 (N.D. Ill. 2020), *affirmed* 2 F. 4th 652 (7th Cir. 2021) (noting defendant's argument that evidence did *not* include identification testimony because no "friend or relative [identified the defendant] as the person seen in the surveillance") *with United*

---

in the event that it did rise to the level of an identification, but I ultimately do not view it as an identification.")

*States v. Tinley*, 62 F. 4th 376. 386 (7th Cir. 2023) (finding that admission of identification testimony based on surveillance footage requires a "basis for concluding that the witness is more likely to correctly identify *the defendant* from the photograph than is the jury") (emphasis added). So far, no witness has identified a defendant in surveillance footage, and the government does not expect to introduce an identification of a particular defendant through Special Agent Case.

Special Agent Case will be called tomorrow to testify to certain characteristics, including, among potentially other things, clothing, footwear, and relative height and weight of some of the individuals that she observed in video footage across multiple vantage points and locations in surveillance footage. Special Agent Case will not testify as to the *identity* of those individuals based upon those characteristics.

Eliciting this type of testimony is consistent with the Court's ruling on the topic and comports with the law. For example, just last month, a different Judge from this Court similarly ruled that an agent could testify regarding the physical attributes of individuals in surveillance footage. *United States v. Russell*, No. 21-CR-107, Dkt. No. 292, at *19-21 (N.D. Ill. Oct. 12, 2023) (Chang, J.). In *Russell*, the defendant moved to preclude law enforcement testimony describing (but not identifying) persons depicted in still shots or store surveillance photos. *Id.* The government did not plan to elicit the agent's identification of a defendant, but did plan to have the agent testify to the persons relative height, weight, gait, and the way certain clothing was worn in video and photographic exhibits. *Id.* at p. 19. The court held:

> [N]on-eyewitnesses can, consistent with Rules 401 and 403, point out certain relevant characteristics on videos or photos. Of course the jury

3

> can view the videos or photos by themselves, but that is no bar to the government (or, for that matter, the defense) from pointing out relevant characteristics to be helpful to the jury. But non-eyewitnesses cannot assign *absolute* height or weight to subjects of a video or photo—that determination is reserved for the jury. Thus, [the testifying agent] can testify on the *relative* height and *relative* weight of one person in a video to another, to point out a relevant characteristic; but he cannot testify on the *absolute* height or weight of a subject in a video.

*Id.* at 19-20.

### B. Testimony Describing Exhibits is Helpful to the Jury

Agent testimony regarding surveillance video, particularly video the agent has viewed numerous times, is appropriate and helpful to the jury. *United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015) ("[A]n officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see."); *United States v. Brown*, 754 F. App'x 86, 88 (3rd Cir. 2018) (holding that testimony of detective "who described for the jury his impressions of a surveillance video" were "based on extensive review of the footage" and "highlighted what the jury could not clearly see viewing the footage at full speed"); *United States v. Muhammad*, 512 F. App'x 154, 161 (3rd Cir. 2013) (holding that testimony of witness "describing what [the witness] saw depicted in still images obtained from…security surveillance video" was helpful in "pointing out…specific details present in the images that might not be apparent to a jury upon a single viewing"); *United States v. Begay,* 42 F.3d 486, 502-03 (9th Cir.1994) (holding that an officer's explanation of video footage helped the jury "discern correctly and efficiently the events depicted in the videotape."). Similarly, Special Agent Case has reviewed surveillance footage exhibits and stills from those exhibits and will be able to testify

4

to details and observations that a jury could not be expected to catch in one showing. Indeed, one defense counsel's opening statement slides consisted solely of still images from surveillance and POD footage, demonstrating the importance of frame-by-frame analysis of certain portions of the videos.

Special Agent Case's testimony will be helpful to the jury. As the Court acknowledged, the parties cannot simply "just drop a confusing video on the jury without context or explanation." Trial Tr. at 3439:2-16. Special Agent Case, who has reviewed the relevant footage extensively, can explain to the jury what aspects of the relevant footage were of interest to FBI's investigation, including the individuals and vehicles in the footage and their relevant characteristics. The Camtasia Video in particular has many moving vehicles and individuals in various frames and almost 30 sources of footage in approximately 17 minutes. The Camtasia Video would be confusing to a jury without the testimony of a law enforcement witness identifying the aspects of the footage that were pertinent to the government's investigation.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:   /s/ *Jason A. Julien*
JASON A. JULIEN
ANN MARIE E. URSINI
CAITLIN WALGAMUTH
SEAN HENNESSY
Assistant U.S. Attorneys
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 353-5300

## **CERTIFICATE OF SERVICE**

      I, Jason A. Julien, an attorney, certify that I served a copy of the foregoing Government's Submission Regarding the Anticipated Testimony of Law Enforcement Witnesses by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                                      Respectfully submitted,

                                      MORRIS PASQUAL
                                      Acting United States Attorney

By:    */s/ Jason A. Julien*
          JASON A. JULIEN
          ANN MARIE E. URSINI
          CAITLIN WALGAMUTH
          SEAN HENNESSY
          Assistant United States Attorneys
          219 S. Dearborn Street, Rm. 500
          Chicago, Illinois 60604
          (312) 353-5300