UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES LIGGINS, et al. | No. 21 CR 618<br><br>Honorable Martha M. Pacold |

**GOVERNMENT'S SUBMISSION REGARDING RULE 404(b)**

Prior to trial, the Government filed a notice and motion to introduce evidence under Federal Rule of Evidence 404(b). (Dkt. 209). Among other things, the government sought to introduce evidence that Tacarlos Offerd knowingly submitted fraudulent paystubs to a car dealership in order to obtain the Ford Fusion that was used in the shooting of Carlton Weekly. The Court precluded the government from introducing this evidence, but stated that the government could revisit the issue should the defendant open the door to the admission of the evidence. (*See* TX 1872-73.) After the Court's order, counsel for Offerd told the jury during opening statement that Offerd believed he had done everything he needed to obtain the car, and falsely suggested that Offerd's lawful purchase of the car should be considered as evidence he is not in a gang or a murderer. As contemplated by the Court and described further below, defendants have opened the door to the introduction of testimony regarding defendant Offerd's fraud, and such testimony should be admitted.

//

I. **The Court's Ruling and Offerd's Opening Statement**

The Court considered the government's notice and motion to admit on multiple occasions. In the end, the Court ruled that the government's exhibits related to the car purchase were admissible, including to the extent they indicated Offerd's car loan had been denied because he was no longer working, but that the government could not elicit testimony regarding fraudulent alteration and submission of the paystubs:

> So I guess just to summarize, I'm going to exclude the evidence of fraud in the purchase of the car on 403 grounds. [. . . ] The government can still introduce the fact that the dealership was urgently requesting return of the car. The government can introduce the text messages since they don't talk about the alleged fraud. The government can talk about the reasons given in the text messages. **And if Mr. Offerd opens the door to the absence of fraud, then the government can bring in the evidence of frau**d.

(TX 1872-73, emphasis added).

After the Court's ruling, during opening statements, Offerd's counsel described how Offerd obtained the Fusion as follows:

> So Tacarlos Offerd bought this Ford Fusion. He went into a car dealership. It had 126,000 miles. He paid a $3,500 down payment. **They want him to be a murderer and a gangbanger and killer and all that. He went in. He didn't carjack somebody because he wanted a car. He went and put down $3500.** He signed the paperwork, and he drove out the last week of July, the last week of July.
>
> On August 3rd, about a week later, before any idea of a shooting, the dealership and the salesman said: Your financing fell through. You don't have the loan. You have to bring the car back. **Does he fight with the guy? Does he refuse to bring the car back?** No, he says: I'll bring the car back. **He was disappointed. He thought he had done everything he was supposed to do, but the financing didn't go through.** They want you to think he's a killer and a gangbanger and a bad guy and all that. He takes the car back to the dealership. Okay? So on the morning of the shoot, August 4th, the salesman is texting him: You've got to get the car back. You're illegal. Get the car back before we

got to get the repo man. And this is like within 24 hours of the guy saying: I want the car back.

(Tx pp. 3089-90, emphasis added).[1]

## II. Argument

"It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party." *United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000) (allowing admission of hearsay statements referred to in opening by defense); *see also United States v. Moore*, 98 F.3d 347, 350 (8th Cir. 1996) (opening statement opened door to evidence of prior bad acts under Rule 404(b); "Moore's counsel in opening statement argued that Moore was simply 'the wrong man at the wrong time at the wrong place.' Like 'mere presence,' that defense puts intent at issue and opens the door to the admission of relevant Rule 404(b) evidence."); *United States v. Croft*, 124 F.3d 1109, 1120 (9th Cir. 1997) (permitting the bolstering of testimony of a witness who was branded as a 'liar' in opening statement; "Croft branded Avalos as a liar in her opening statement, rhetoric that clearly opened the door to rehabilitation through bolstering evidence"); *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir. 1995) (opening statement opened the door to attack credibility of witness).

---

[1] Counsel for Roberson also put the question of lawful income at issue, when he asked Special Agent Dixon a series of questions about whether FBI had investigated defendant's lawful income from rap music, such as from Spotify and Apple music and elsewhere, culminating in the question, "Wouldn't you want to know that they're supporting themselves by putting out music, as opposed to holding up banks?" The Court sustained the government's objection to this question. (Tx. Pp. 4578-79).

3

Some cases indicate a door cannot be opened during opening statement because openings are not evidence. However, those cases are distinguishable here, and the above line of cases is the better read. For example, in *United States v. Green*, 648 F.2d 587, 595 (9th Cir. 1981), the Ninth Circuit found error where the government was permitted to introduce evidence of firearms and cocaine found in a defendant's home which were unrelated to the charges at issue in the trial, citing cases which specifically discussed the prejudicial impact of unrelated firearms evidence. The government had argued, in sum, that defendant had opened the door during opening argument by mentioning that the defendant had not contacted a co-defendant in a particular time period because doing so would have been a violation of the terms of their probation. The government argued that the defendant's possession of firearms and cocaine were also probation violations and should be introduced. The instant case is distinguishable in that it does not involve the particularly prejudicial issue of firearms possession on which the *Green* court was focused. Additionally, in *Green*, the government presented substantial extrinsic evidence and testimony regarding the cocaine and firearms, including testimony and photos, well beyond the limited evidence the government contemplates here (as described below). Further, the Ninth Circuit held in a later decision (*Croft*, cited above), that an opening statement could open the door to otherwise admissible testimony.

Here, defendant Offerd opened the door to testimony regarding the deliberate, fraudulent submission of false paystubs in support of his car loan. He put into issue, not just his character generally, but specifically disclaimed wrongdoing with respect

4

to obtaining the Fusion. The opening statement indicates that Offerd purchased the car not only innocently, but entirely legally, believing he "had done everything he was supposed to do." This is simply incorrect. The parties are aware that Offerd obtained fraudulent paystubs and knowingly submitted them to the dealership. Further, Offerd's opening statement indicated the absence of illegal activity in obtaining the car – "[h]e didn't carjack somebody" – and suggested that this allegedly lawful purchase of the Fusion was affirmative evidence that Offerd wasn't "a murderer and a gangbanger and a killer and all that." In other words, Offerd's counsel suggested that the absence of illegality in the car purchase was affirmative evidence of innocence of the instant charges. The government should therefore be permitted to present evidence otherwise.

### III. Contemplated Testimony

Should the Court permit, the government would seek to offer testimony from witness T.H. that defendant Offerd knowingly provided the car dealership with fraudulent paystubs to support his loan application, and a car dealership employee may testify that the fraud was one reason the loan application was declined. The government would not offer any additional or different exhibits as a result of the Court's ruling. The government anticipates this additional testimony would add only a few minutes to the total trial length, and the government does not expect to focus on the fraud as a central part of either witness' direct examination.

//

## IV. Conclusion

Consistent with the Court's prior ruling, the Court should permit the Government to elicit testimony that defendant Offerd knowingly submitted fraudulent paystubs to Midway Autohaus in support of his purchase of the Ford Fusion.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ *Ann Marie E. Ursini*
JASON A. JULIEN
ANN MARIE E. URSINI
CAITLIN WALGAMUTH
SEAN HENNESSY
Assistant U.S. Attorneys
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 353-5300

**CERTIFICATE OF SERVICE**

I, Ann Marie Ursini, an attorney, certify that I served a copy of the foregoing Government's Submission Regarding 404(b) by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney

By:   /s/ *Ann Marie E. Ursini*
        JASON A. JULIEN
        ANN MARIE E. URSINI
        CAITLIN WALGAMUTH
        SEAN HENNESSY
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604
        (312) 353-5300