**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLIOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 21 CR 618 |
| | ) | |
| KENNETH ROBERSON, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR ACQUITTAL OR A**
**NEW TRIAL UNDER RULES 29 AND 33**

NOW COMES the Defendant, KENNETH ROBERSON, by his counsel, moving for either an acquittal or a new trial under Fed. R. Crim. P. Rules 29 and 33. In support he states the following:

## I. INTRODUCTION[1]

Roberson proceeded to trial along with five co-defendants, in a lengthy months-long trial. The evidence against him was simple and largely undisputed. He was not a member of O-Block, but according to the Government he was an "associate." The evidence showed he was friends with Liggins, and not an enemy of the others. Other than that, the term "associate" really had no legal significance other than whatever the Government wanted to attach to it to fit its purpose. The term was never defined in any instruction and is not defined under the law.

[1]Roberson is aware that his co-defendants will file hundreds of pages of post-trial briefing. Rather than re-state the facts and arguments they are going to make, he will adopt the factual recitations and the arguments each of them are making as if he were making them here.

The theory was Roberson had driven to Oak Street when Duck was murdered, though it was unclear if he knew Duck was going to be murdered or merely roughed up. Roberson was not compensated for his activities that day, and he did not act to maintain or increase his position in any enterprise. While he was a drug dealer, selling drugs within Parkway Gardens, he was not selling them on behalf of O-Block.

Charged in counts one thru seven, he was found guilty of counts one, two, three, six and seven.[2] In count one, the government charged Roberson and the others with murder in aid of racketeering. The indictment charged the defendants as engaging in these activities “for the purpose of maintaining an increasing position in O-Block.” See count one, ¶6. All were charged either directly or under mixed Illinois state law accountability theories and a federal aiding and abetting theory. See 720 ILCS 5/5-1 and 5/5-2, and 18 U.S.C. §2.

## II. ARGUMENT

Federal Rule of Criminal Procedure 29 states that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Cr. P. 29. A Rule 29 motion should be granted when "after viewing the evidence in the light most favorable to the United States, the trial court finds that no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Howard, 179 F. 3d 539, 542 (7th Cir. 1999) ("[A]

---

[2] Because the remaining counts built upon count one, criminal liability required a finding first on count one. The same arguments apply to all counts.

judgment of acquittal should only be granted if the evidence, looked at in the government's favor, is so scant that the jury could only speculate as to the defendant's guilt, and a reasonably minded jury must have had a reasonable doubt as to the defendant's guilt."). A guilty verdict, however, can be sustained only if the government introduces sufficient credible and probative evidence that the defendant was guilty of each element of the offense on each of the charges. *Neder v. United States*, 527 U.S. 1, 15 (1999); In re *Winship*, 397 U.S. 358, 364 (1970). Failure to prove an essential element entitles a defendant to an acquittal. *Jones v. United States*, 526 U.S. 227 (1999).

Though a defendant moving for judgment of acquittal under Rule 29 may "bear[] a heavy burden," it "is not insurmountable." *United States v. Cassese*, 428 F. 3d 92, 98 (2nd Cir. 2005) (affirming district court's judgment of acquittal after jury verdict of guilty) (citations omitted). While the evidence must be construed in the light most favorable to the government, in a case based on circumstantial evidence the standard "is not so heavily weighted in favor of the prosecution that in ruling on a Rule 29 motion the Court must blindly and uncritically accept that every inference the prosecution argues can reasonably be drawn from the circumstantial evidence in the record." *United States v. General Elec. Co.*, 869 F. Supp. 1285, 1290 (S.D. Ohio 1994). Rather, the district court must enter judgment of acquittal "if the trier of fact is called upon to choose between reasonable probabilities of equal weight, one innocent and the other guilty." Id.

"A Rule 29 motion calls on the court to distinguish between reasonable

inferences and speculation. Each step in the inferential chain must be supported by evidence that allows the jury to 'draw reasonable inferences from basic facts to ultimate facts.'" *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *Coleman v. Johnson*, 132 S. Ct. 2060, 2064, 182 L. Ed.2d 978 (2012)). *See* also *United States v. Sanchez*, 615 F.3d 836, 845 (7th Cir. 2010) (overturning jury verdict, stating a guilty verdict cannot rest solely on the "piling of inference upon inference.") (quoting *United States v. Moore*, 115 F.3d 1348, 1364 (7th Cir. 1997)).

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.

Roberson will address several unique issues below.

To begin, the plain language of 18 U.S.C. §1959 — Violent Crimes in Aid of Racketeering Activity, is direct. It requires that one either receive consideration, a promise or agreement to pay, or that one is acting for the purpose of gaining interest or to maintain or increase their position within a racketeering enterprise for VICAR liability to attach:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished……………………………

18 U.S.C. § 1959. Here, the government's theory against Roberson was that he was

accountable for the murder under a state law accountability theory. Then the government tried to bootstrap liability for VICAR under 18 U.S.C. §1959. The indictment here charged each of the defendants as a principle. While the aider and abettor statute was cited in the language of the indictment, the indictment omitted any language Roberson was charged as an aider or abettor. It was duplicitous and a variance to allow the Government to argue both state law accountability and then aiding. Practically, the Government argued Roberson was an aider and abettor of conduct he was accountable for. It was two layers instead of one. That is not allowed and too far removed.

Next, is the Court's giving of an additional instruction. After the evidence was completed, the Court held a three-day jury instruction conference. In accordance with Fed. R. Crim. P. 30, the jury instruction conference was held and concluded before the closing arguments began. The conference had taken days and was contentious. Much of the time was spent tussling over how the jurors were to be instructed on the §1959 violation.

The closing arguments began on January 5, 2024, but before the arguments commenced the Court instructed the jurors. With respect to the racketeering charge, they had to find:

> Count One: Murder in Aid of Racketeering Elements
>
> Count One of the indictment charges defendants Charles Liggins, Kenneth Roberson, Tacarlos Offerd, Christopher Thomas, Marcus Smart, and Ralph Turpin with the murder of Carlton Weekly, also known as FBG Duck, in aid of racketeering activity.
>
> In order for you to find the defendant you are considering guilty of this

> charge, the government must prove the following five elements beyond a reasonable doubt:
>
> 1. The O-Block street gang was an enterprise;
> 2. The enterprise was engaged in racketeering activity;
> 3. The activities of the enterprise affected interstate commerce;
> 4. The defendant you are considering committed the murder of Carlton Weekly in violation of Illinois Law;
> 5. *The Defendant you are considering committed the murder of Carlton Weekly for the purpose of maintaining or increasing his position in the enterprise*.
>
> The government does not have to prove this was the defendant's sole or principal purpose in committing the murder.
>
> If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

Transcript, January 5, 2024, pgs. 9385-9386. (italics added)

For the remaining counts they were told that liability was derivative of a finding of guilty on count one.

The government highlighted this instruction in its opening close. Indeed, count one was where the government spent the majority of its time "We're going to start with Count One. In Count One is where I'm going to spend most of my time today, because Count One relates to the murder of Carlton Weekly." Tr., pg. 9421. As the government began, it underscored that "The government has to prove a number of elements." Tr., pg. 9421. It continued:

> First, that O-Block was an enterprise. And you've heard there's a definition of that that I'll go through in a moment.

> Second, that the enterprise was engaged in racketeering activity, which you've also had defined.
>
> Third, that the activities of the enterprise affected interstate commerce. Fourth, that the defendant committed first degree murder of Weekly under Illinois law.
>
> *And, finally, that the defendant did so, committed that murder, to maintain or increase his position in the enterprise.*

Tr., January 5, 2024, pgs. 9421-9422. (italics added)

The government's argument was consistent with the instruction that it advocated for, agreed to, and the Court had already given to the jurors. The government also argued its theory that there could be aider or abettor liability for count one. Tr., pgs. 9524-9525.

As the government argued, when counsel for Roberson did not like something government's counsel said, they did what lawyers have traditionally done, they objected. When other defense counsel did not agree with something that was said during the closing, they objected.

On the defense side Roberson first closed. At times there were things that counsel said during his closing that the government disagreed with, they objected. Discussing the issue at hand, Roberson argued that the jurors' tasks was to find "The defendant you're considering committed the murder of Carlton Weekly for the purpose of maintaining or increasing his position in the enterprise. You can't maintain or increase your position in something you're not in. You can't do it. He's not charged with doing it to get into the enterprise. He's not charged with doing it because he's a wannabe. He's charged with it, and it says: 'The defendant you are

considering committed the murder of Carlton Weekly for the purpose of maintaining or increasing his position in the enterprise.'" Tr., pg. 9614. Roberson then argued that there was no evidence he was in O-Block and thus he could not maintain or increase his position in something he was not in. Tr., pg. 9615.

The government did not object to the argument.

Turpin next closed. His counsel said things on the subject during his closing that the government did object to. The objections were ruled upon. But the government decided it did not like the way the instructions were being argued, and it was not satisfied to simply object. It asked the Court to do more — to insert a new instruction that rebutted the defense arguments. Put another way, after the defense argued a theory that was consistent with the instructions that the government had agreed to and the Court had read, at the government's insistence the Court decided to give a new instruction that contradicted the defense argument.

Fed. R. Crim. P. 30 requires the court to settle upon a set of jury instructions prior to the parties beginning their closing arguments. The purpose of the rule is to insure counsel has the opportunity to argue the case intelligently to the jury. *Harvill v. United States*, 501 F.2d 295, 297 (9th Cir. 1974). A defendant is prejudiced when they have been substantially misled in formulating and presenting their argument. *United States v. Smith*, 629 F.2d 650, 653 (10th Cir. 1980), cert denied 449 U.S. 1994, cited in *United States v. Gaskins*, 849 F.2d 854 (9th Cir. 1988).

In *Harvill*, the court had agreed to give a specific intent instruction, then after counsel had argued determined that the law did not require it. The appellate court

found that the change in the instruction had the effect of the court's repudiation of counsel's argument and a new trial was required. In doing so, the court quoted from *United States v. Mendonza*, 473 F.2d 697 (5th Cir. 1973):

> Although we recognize that the evidence against the [defendant] is nearly overwhelming, we cannot say with reasonable certainty that the outcome would be the same if the defense had argued before the jury with accurate information about the trial Judge's proposed action upon the requested jury instruction.

The same must be said here.

Roberson expects that the government will argue that any error was harmless because the government believes the evidence is overwhelming, Roberson expects they will also argue that it is harmless because he had two arguments. But here, the wording of the instruction was a constant battle between the parties and the court did not settle upon the language of the instruction until long after the defense arguments were completed. In other words, not only did the defense not know about the instruction before it began its argument, as required by Fed. R. Crim. P. Rule 30, but it did not know the language of the instruction when it concluded its arguments.

But the government did know the language of the instruction before it's rebuttal argument. And it talked about it in rebuttal. See Tr., pgs. 10198-10204.

The entire purpose of Rule 30 was frustrated when the Court settled on a set of instructions before closing arguments, the defense argued based upon the instructions, and then the Court gave an instruction which gutted and impeached the defense Roberson argued. Nothing could be more unfair.

**Additional Reasons Under Rules 29 and 33**

1. The public was improperly excluded from the courtroom.

2. Roberson was not proven guilty beyond a reasonable doubt.

3. Allowing Roberson to be found guilty under any theory other than committing murder for the purpose of maintaining or increasing his position in the enterprise was a variance and a constructive amendment of the indictment.

Respectfully submitted,

KENNETH ROBERSON

By:s/ Steven Greenberg
One of His Attorneys

Steven Greenberg
GREENBERG TRIAL LAWYERS
53 W. Jackson Blvd., Suite 315
Chicago, Illinois 60604
(312) 879-9500
Steve@GreenbergCD.com

Cheryl T. Bormann
Law Offices of Cheryl Bormann
53 W. Jackson Blvd., Suite 315
Chicago, IL 60604
(312) 588-5011
Cheryl.T.Bormann@gmail.com